LIBERTY MANOR, Appellant,

v.

Cynthia RINNELS, Appellee.

No. 91–1352.

Supreme Court of Iowa.

July 22, 1992.

John W. Holmes of Holmes & Holmes, Waterloo, for appellant.

Linnea M. Nelson of Legal Service Corp. of Iowa, Waterloo, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

In this landlord-tenant case, the district court dismissed the landlord's action to recover real property under Iowa Code chapter 646 (1989). The court did so because the landlord failed to comply with the notice requirements of Iowa Code section 562A.27(1) before terminating the lease. We affirm.

The landlord, Liberty Manor Limited Partnership, operates a fifty-seven unit apartment complex for the low-income elderly. The tenant, Cynthia Rinnels, moved into Liberty Manor in August 1980 after she and the landlord had signed a lease. She has occupied the apartment since then.

Over the years Rinnels has allegedly been involved in three separate incidents with other tenants, in violation of the lease terms. These culminated in the lease termination at issue here.

The first incident happened on November 12, 1987, when Rinnels allegedly became involved in a shouting and arguing match with a now deceased resident in the facility's community room. The incident prompted Liberty Manor to draft an additional agreement for Rinnels. The parties signed this document on November 30, 1987. This document was captioned "Option to Vacate Liberty Manor Apartments," and gave Rinnels "one more chance" to live at the facility if she complied with the lease provisions.

The second incident happened about December 1, 1990, when Rinnels allegedly forced the wheelchair of one of the tenants into another tenant's apartment. This incident prompted Liberty Manor to give Rinnels a written notice of termination, effective February 3, 1991. That date came and went, but Rinnels continued to remain in residence.

The last incident happened about February 21, 1991, when Rinnels allegedly became upset about the quality of painting done in another tenant's living room. She registered her dissatisfaction by punching a hole about four inches in diameter in the tenant's living room wall.

The next day Liberty Manor gave Rinnels an "Amended and Substituted Termination Notice." This notice purported to terminate the rental agreement as of April 1, 1991. The notice did not give Rinnels any opportunity to remedy the alleged violations.

On April 4 Liberty Manor demanded that Rinnels surrender her unit, but she declined.

Liberty Manor brought a forcible entry and detainer action under Iowa Code chapter 646 to recover possession of Rinnels' unit. Rinnels moved to dismiss, contending that Liberty Manor had failed to provide the required notice under section 562A.27(1). The district court agreed with Rinnels and sustained her motion. It is from this ruling that Liberty Manor appeals.

This case turns on whether Liberty Manor had to give a "14/30" day notice as set out in section 562A.27(1), which pertinently provides:

Except as provided in this chapter, if there is a material noncompliance by the tenant with the rental agreement ... the landlord may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and that the *rental agreement will terminate upon a date not less than thirty days after receipt of the notice if the breach is not remedied in fourteen days, and the rental agreement shall terminate as provided in the notice subject to the provisions of this section. If the breach is remediable by* repairs or the payment of damages or *otherwise and the tenant adequately remedies the breach prior to the date specified in the notice, the rental agreement shall not terminate.* If substantially the same act or omission

which constituted a prior noncompliance of which notice was given recurs within six months, the landlord may terminate the rental agreement upon at least fourteen days' written notice specifying the breach and the date of termination of the rental agreement.

(Emphasis added.) Simply put, in the case of a breach that is remediable the tenant must be given fourteen days to remedy the breach. If the breach is remedied within that period, the lease will *not* terminate. If the tenant similarly breaches the lease within six months, the landlord may terminate the lease on fourteen days' notice.

In its amended and substituted termination notice mentioned earlier, Liberty Manor informed Rinnels that it was terminating her lease because of the three incidents earlier described. The notice then goes on to say:

You are notified that Paragraph 19(b) of your Dwelling Lease provides that no tenant shall do anything which will interfere with the rights, comforts or convenience of other tenants. Your aggressive and intimidating conduct is a substantial interference with the other tenants' rights of quiet enjoyment.

You are further notified that it is the Landlord's position that *your aggressive and intimidating conduct is not a breach which "... is [remediable] by repairs or the payment of damages or otherwise ..." within the meaning of section 562A.27(1) of the Code of Iowa. Accordingly, it is the position of the Landlord that no fourteen (14) day period to remedy these serious and repeated interferences with the rights and quiet enjoyment of other tenants is required.* Accordingly, your rental agreement will terminate pursuant to this notice on April 1, 1991.

The italicized portion of the notice is the crux of Liberty Manor's position here as it was in the district court. Liberty Manor thinks that whether the breach is remediable is a fact question for the trial court and for that reason its notice was not deficient.

We think the catchall word "otherwise" in section 562A.27(1) is intended to cover breaches that cannot be remedied by repairs or the payment of damages. Such breaches would, for example, include conduct that interferes with the other tenants' rights of quiet enjoyment.

■ This is not to say, however, that a trial court faced with repeated, obnoxious behavior must find that the breach has been remedied simply because the tenant has not been guilty of such behavior since the notice. We think a trial court in these circumstances could reasonably and properly find otherwise and award the landlord a writ of possession. Such a finding would mean the trial court did not believe the tenant had remedied the breach.

However, the fourteen-day notice to remedy must still be given. Whether the tenant has remedied the breach then becomes a fact question for the trial court.

There is, of course, another safety valve, albeit not as effective as a trial court's finding that the breach in question has not been remedied. If, within six months, the tenant is guilty of substantially the same behavior, the landlord can terminate the lease.

We now hold that the word "otherwise" in section 562A.27(1) includes offensive behavior that constitutes a breach of the lease. So in these circumstances a landlord must give the 14/30 day notice specified in this section. Failure to do so deprives the trial court of jurisdiction to hear a forcible entry and detainer action to recover possession of the leased property. Several other courts faced with the same issue have reached the same conclusion. *See, e.g., Fenn v. Windsor at Kingsborough, Inc.,* 226 Kan. 653, 654–56, 603 P.2d 188, 189–90 (1979) (per curiam) (Kansas statute tracked Iowa Code section 562A.27(1); failure in notice to state tenant had fourteen days to remedy breach [loud and rowdy parties] rendered the notice defective); *Housing Authority v. Terry,* 114 Wash.2d 558, 563–66, 789 P.2d 745, 748–49 (1990) (statute required ten-day opportunity to comply with a breached term in a lease; landlord's failure to notify tenant that he had ten days to remedy breach [tenant breached lease by creating threat to health and safe-

ty of another tenant by, among other things, trying to run over her] rendered notice defective and deprived court of jurisdiction to hear case).

Because Liberty Manor's notice did not include the statutory fourteen-day notice to remedy the alleged breach, the district court lacked jurisdiction to hear the case. For this reason, the district court correctly sustained Rinnels' motion to dismiss. We therefore affirm.

AFFIRMED.