# IN THE SUPREME COURT OF IOWA

No. 66 / 04-1114

Filed July 14, 2006

**ROBERT JAMES GRANT**,

> Appellant,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES**,

> Appellee.

_____

Appeal from the Iowa District Court for Clinton County, Mark J. Smith, Judge.

Appeal from district court judgment affirming dismissal of administrative agency appeal on grounds of issue preclusion. **REVERSED AND REMANDED.**

Natalie Hope Cronk of Johnston & Nathanson, P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Tabitha Gardner, Assistant Attorney General, for appellee.

**CADY, Justice.**

This appeal is from a district court's ruling on a petition for judicial review of an administrative agency decision. The Iowa Department of Human Services dismissed an application to correct a child abuse report on grounds of issue preclusion. The district court affirmed. Upon our review, we reverse the district court judgment and remand for further proceedings.

## I.    Background Facts and Proceedings

Robert Grant and Linda Jensen had a tumultuous, rollercoaster relationship. They were married in 1991, followed by periodic episodes of discontent and reconciliation. In November 2000, Robert filed for divorce for the second time, and a custody battle ensued over their two sons, Robert Jr. and Samuel. Robert Jr., known as Bo, was born in 1995. Samuel, known as Sam, was born in 1997. He has Down syndrome. The dissolution trial was eventually scheduled for July 2002.

In August 2001, during the pendency of the dissolution, Linda filed a petition for relief from domestic abuse in district court. Linda and Robert entered into a consent agreement resulting in a protective order entered by the district court that granted Linda temporary custody of Bo and Sam, with visitation on alternating weekends to Robert. The visitation exchange was set up to take place at a police station, and Robert exercised his visitation at a local motel.

Following a weekend visit in October 2001, Bo reported that Robert became angry after Bo and Sam started to argue. Robert responded by grabbing Bo by the shoulder and throwing a toy truck that struck Sam on the head. Bo also reported that Robert kicked him in the groin after he objected to his father's behavior. The incident was subsequently

reported to the state Department of Human Services (DHS). The DHS promptly conducted a comprehensive investigation and assessment.

The DHS filed a founded assessment report on November 8, 2001. The child protection worker who conducted the investigation prepared the report that determined the incident met the definition of child abuse based on Robert's failure to provide proper supervision of children under his care.[1] The report indicated Robert denied the incident occurred, and

---

[1]Iowa Code section 232.68(2)(*d*) defines "child abuse," in part, to include

> [t]he failure on the part of a person responsible for the care of a child to provide for the adequate food, shelter, clothing or other care necessary for the child's health and welfare when financially able to do so or when offered financial or other reasonable means to do so.

Iowa Code § 232.68(2)(*d*) (2001); *see also* Iowa Admin. Code r. 441—175.21 (" *'Denial of critical care'* is the failure on the part of a person responsible for the care of a child to provide for the adequate food, shelter, clothing or other care necessary for the children's health and welfare when financially able to do so, or when offered financial or other reasonable means to do so and shall mean any of the following: (1) Failure to provide adequate food and nutrition to the extent that there is danger of the child suffering injury or death. (2) Failure to provide adequate shelter to the extent that there is danger of the child suffering injury or death. (3) Failure to provide adequate clothing to the extent that there is danger of the child suffering injury or death. (4) Failure to provide adequate health care to the extent that there is danger of the child suffering injury or death. A parent or guardian legitimately practicing religious beliefs who does not provide specified medical treatment for a child for that reason alone shall not be considered abusing the child and shall not be placed on the child abuse registry. However, a court may order that medical service be provided where the child's health requires it. (5) Failure to provide the mental health care necessary to adequately treat an observable and substantial impairment in the child's ability to function. (6) Gross failure to meet the emotional needs of the child necessary for normal development. (7) Failure to provide for the proper supervision of the child to the extent that there is danger of the child suffering injury or death, and which a reasonable and prudent person would exercise under similar facts and circumstances. (8) Failure to respond to the infant's life–threatening conditions (also known as withholding medically indicated treatment) by providing treatment (including appropriate nutrition, hydration and medication) which in the treating physician's reasonable medical judgment will be most likely to be effective in ameliorating or correcting all conditions, except that the term does not include the failure to provide treatment (other than appropriate nutrition, hydration, or medication) to an infant when, in the treating physician's reasonable medical judgment any of the following circumstances apply: the infant is chronically and irreversibly comatose; the provision of the treatment would merely prolong dying, not be effective in ameliorating or correcting all of the infant's life–threatening conditions, or otherwise be futile in terms of the survival of the infant; the provision of

further stated that Robert believed Bo fabricated the event due to improper influences from Linda and a male friend. The child protection worker found Bo to be credible based on a variety of factors, and concluded Robert failed to properly supervise the two boys by "a preponderance of evidence." The report also concluded the incident was not minor, and that Robert was the alleged perpetrator in a prior founded child abuse report in November 2000. The prior report involved an assault incident between Robert and a stepchild. Consequently, the current report was placed in the state child abuse central registry.

Based on the event that occasioned the child abuse report, Linda filed an application in the domestic abuse proceeding to modify the terms of the visitation so as to limit Robert to supervised visits with Bo and Sam. The application for modification was set for hearing before the district court, and both Linda and Robert were represented by counsel.

The district court modified the visitation provided under the protective order by written order on December 7, 2001. It found the incident reported by Bo "took place" and that Robert "demonstrated inappropriate anger" that endangered the children. The court found Bo's report was consistent, detailed, and credible. To the contrary, the court found Robert's denial was "implausibl[e]" and "hollow."

---

the treatment would be virtually futile in terms of the survival of the infant and the treatment itself under the circumstances would be inhumane."); *id.* (" '*Proper supervision*' means that supervision which a reasonable and prudent person would exercise under similar facts and circumstances, but in no event shall the person place a child in a situation that may endanger the child's life or health, or cruelly or unduly confine the child. Dangerous operation of a motor vehicle is a failure to provide proper supervision when the person responsible for the care of a child is driving recklessly, or driving while intoxicated with the child in the motor vehicle. The failure to restrain a child in a motor vehicle does not, by itself, constitute a cause to assess a child abuse report.").

On March 5, 2002, Robert filed a written statement with the DHS claiming the report and assessment were erroneous. He requested that it be corrected. Robert claimed the report should be changed from "founded" to "not confirmed" and be removed from the central registry for four reasons: (1) Bo fabricated the incident due to manipulative influences by Linda; (2) there was insufficient evidence of a physical injury to Bo or Sam; (3) Robert does not fit the profile of a child abuser; and (4) employees at the motel where the visitation took place reported Robert was an attentive father to the boys. Additionally, Robert asserted that he submitted to a polygraph examination that revealed he truthfully answered questions about the alleged incident.

The DHS denied the correction request, and Robert sought review through the state inspection and appeals procedure. The DHS asserted Robert was precluded from seeking to change the conclusion in the report from "founded" to "not confirmed" because the district court decision previously determined the incident occurred as reported by Bo. The DHS sought to dismiss the request.

An administrative law judge issued a proposed ruling dismissing the request. The director of the Department of Human Services subsequently adopted the ruling as a final decision.

Robert then sought judicial review of the DHS decision from the district court. The district court affirmed the agency action based on issue preclusion.

Robert appealed, and raised three grounds of error. First, he claimed the doctrine of issue preclusion did not apply because there was no identity of issues between the modification-of-visitation proceeding in district court and the request to correct the abuse report before the

administrative agency. Second, he claimed issue preclusion did not apply because a statute gave him the right to an evidentiary hearing on his request to correct the abuse report. Finally, he claimed issue preclusion did not apply under an exception to the rule, based on the legislature's specific allocation of jurisdiction to the DHS to correct child abuse assessments.

## II. Standard of Review

Chapter 17A governs our review. We may only interfere with the agency's "decision if it is erroneous under one of the grounds enumerated in the statute, and a party's substantial rights have been prejudiced." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006) (citing Iowa Code § 17A.19(10)). We are bound by the agency's findings of *fact* "if supported by substantial evidence in the record as a whole." *Id.* (citing *Excel Corp. v. Smithart,* 654 N.W.2d 891, 896 (Iowa 2002); Iowa Code § 17A.19(10)(*f*)). "[T]he question on appeal is not whether the evidence supports a different finding than the finding made by the commissioner, but whether the evidence 'supports the findings actually made.'" *Id.* (quoting *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 649 (Iowa 2000)). In contrast, we are not bound by the agency's interpretation of the *law* and "may substitute our interpretation for the agency's." *Id.* (citing *Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 604 (Iowa 2005)). Finally, while "[w]e allocate some degree of discretion" to the agency in its application of the law to the facts, we may reverse if the agency's application of the law to the facts was affected by "irrational reasoning; failure to consider relevant facts; or irrational, illogical, or wholly unjustifiable application of law to the facts." *Id.* (citing Iowa Code § 17A.19(10)(*c*), (*i*), (*j*), (*m*)).

Whether the elements of issue preclusion are satisfied is a question of law. *See Comes v. Microsoft Corp.*, 709 N.W.2d 114, 117 (Iowa 2006) (reviewing decision as to applicability of doctrine of issue preclusion for correction of errors at law); *Mrozek v. Intra Fin. Corp.*, 699 N.W.2d 54, 61 (Wis. 2005) ("Whether issue preclusion is a potential limit on litigation in an individual case is a question of law . . . ."); *accord Bartlett v. Dep't of Revenue ex rel. Bartlett*, 125 P.3d 328, 330 (Alaska 2005); *Smith v. U.S.R.V. Props., LC*, 118 P.3d 127, 130 (Idaho 2005); *Simpson v. Chi. Pneumatic Tool Co.*, 693 N.W.2d 612, 616 (N.D. 2005). Therefore, we are not bound by the agency's decision on this issue, and may substitute our own interpretation of the law for the agency's. *See* Iowa Code § 17A.19(10)(*c*) (stating a reviewing court may reverse agency action if it is "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency").

## III. Issue Preclusion

Issue preclusion, or collateral estoppel, "prevents parties from relitigating issues previously resolved in prior litigation if certain prerequisites are established." *Comes*, 709 N.W.2d at 117 (citing *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)). We have identified four elements that must be satisfied in order for the prior determination to have preclusive effect in a subsequent proceeding. They are:

> "(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

*Id.* at 118 (quoting *Hunter*, 300 N.W.2d at 123); *see also* Restatement (Second) of Judgments § 27, at 250 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."); *id.* § 29, at 291 ("A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.").

In considering the application of the doctrine, it is important to observe that it applies to both legal and factual issues. We have said "where a particular issue or fact is litigated and decided, the judgment estops both parties from later litigating the same issue. The entire premise of issue preclusion is that once an issue has been resolved, there is no further fact-finding function to be performed." *Colvin v. Story County Bd. of Review*, 653 N.W.2d 345, 348-49 (Iowa 2002) (citations omitted); *see* Restatement (Second) of Judgments § 27 cmt. *c* ("An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), or of law.").

While a request to correct data and findings in an abuse report can present a variety of legal and factual issues that may prevent a party from satisfying the first element of issue preclusion, in this case, Robert only sought to challenge the finding by the DHS that the incident occurred as described by Bo. Thus, the issue raised by Robert in the proceeding to correct the assessment was factual in nature, and dealt

with credibility—did the incident occur as described by Bo? Although the modification of the visitation proceeding presented different legal issues, the same predicate factual issue raised by the request to correct the child abuse assessment was presented—did the incident occur as described by Bo? Accordingly, the identity of the factual issues supports application of the doctrine of issue preclusion under the circumstances of this case, as long as the other elements are met.[2]

Notwithstanding, as with most principles of law, the doctrine of issue preclusion is not without exceptions. *See* Restatement (Second) of Judgments § 28, at 273-74 ("Exceptions to the General Rule of Issue Preclusion"). Even when all elements of the doctrine are satisfied, there are circumstances when it will not be applied to prevent relitigation of an issue.

We have recognized an exception to the doctrine when the allocation of jurisdiction between two courts or adjudicative bodies justifies a new determination of the issue by the body given jurisdiction over an action. *Heidemann v. Sweitzer*, 375 N.W.2d 665, 667-68 (Iowa 1985). This exception has been fully stated in Restatement (Second) of Judgments section 28(3):

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . .

---

[2]The other three elements—that the issue was raised and litigated, material and relevant, and necessary and essential—are not challenged by Robert on appeal. Therefore, we do not address them and assume without deciding they are met. *See ALCOA v. Musal*, 622 N.W.2d 476, 479-80 (Iowa 2001) ("It is a well-established rule of appellate procedure that '[t]he scope of appellate review is defined by the issues raised by the parties' briefs.' Issues not raised in the appellate briefs cannot be considered by the reviewing court." (Citations omitted.)).

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them . . . ."

Restatement (Second) of Judgments § 28(3), at 273.

A comment to the Restatement rule explains that the exception applies to situations in which issue preclusion is "asserted in an action over which the court rendering the prior judgment would not have had subject matter jurisdiction." *Id.* cmt. *d*, at 279. The comment further explains that the exception does not apply to every incident when a court in the first action does not have subject matter jurisdiction over the second action, but only when there are special reasons to exclude application of the issue preclusion doctrine. *See id.* ("In many such cases, there is no reason why preclusion should not apply; the procedures followed in the two courts are comparable in quality and extensiveness, and the first court was fully competent to render a determination of the issue on which preclusion is sought. In other cases, however, there may be compelling reasons why preclusion should not apply."). One such reason is when "the legislative allocation of jurisdiction . . . may have been designed to insure that when an action is brought to determine a particular issue directly, it may only be maintained in a court having special competence to deal with it." *Id.* The comment states:

> In such instances, after a court has incident[al]ly determined an issue that it lacks jurisdiction to determine directly, the determination should not be binding when a second action is brought in a court having such jurisdiction. The question in each case should be resolved in the light of the nature of litigation in the courts involved and the legislative purposes in allocating jurisdiction among the courts of the state.

*Id.*

The situation presented in this case is the subject of this exception. Although the district court lacked jurisdiction to hear and decide initial requests to correct child abuse reports, it decided an issue of fact in the course of exercising its jurisdiction in a parallel court proceeding that was subsequently presented to an administrative agency in the course of exercising its jurisdiction to hear and decide requests to correct child abuse reports.

We adopted and applied this exception in *Heidemann v. Sweitzer*, where a finding by a district court in a suppression hearing in a criminal case that an arresting officer failed to comply with the implied consent procedures was asserted to preclude relitigation of the same factual issue by a hearing officer in a Department of Transportation (DOT) hearing to revoke a driver's license for refusal to submit to a chemical test under the implied consent law. *Heidemann*, 375 N.W.2d at 666-67. We found that the legislature specifically vested the DOT with jurisdiction to revoke a driver's license for refusal to submit to testing pursuant to the implied consent procedure by enacting chapter 321B, and that this grant of specific jurisdiction was a recognition "that the department has special competency to resolve the relatively narrow issues which arise in such license revocation proceedings." *Id.* at 668. We found the decisionmaking authority given to the DOT by the legislature would be undercut by applying the doctrine of issue preclusion based on a parallel criminal proceeding that happened to rule on a factual issue concerning a law enforcement officer's compliance with the statutory procedure for requesting a driver to submit to a chemical test. *Id.* Thus, we must decide if the legislature similarly designed the child abuse statute to enable the DHS to decide issues presented in an action to correct a child

abuse assessment even though they may have previously been decided in a parallel court proceeding.

Our legislature enacted the child abuse statute after it recognized "[c]hildren in this state are in urgent need of protection from abuse." Iowa Code § 232.67. In order "to provide the greatest possible protection to victims or potential victims of abuse," the legislature established a comprehensive system of child abuse reporting, assessment, and rehabilitation. *Id.* The legislature also placed the DHS at the forefront of this protective net, and assigned it myriad critical responsibilities and duties to perform. *See generally id.* chs. 232, 235A. One such duty involves the receipt and assessment of child abuse reports, as well as the maintenance of a central registry of founded child abuse assessments. *See id.* § 232.71B(1)(*a*) ("If the department determines a report constitutes a child abuse allegation, the department shall promptly commence an appropriate assessment within twenty-four hours of receiving the report."); *id.* § 235A.14(1) ("There is created within the state department of human services a central registry for child abuse information."); *id.* § 232.71D(3) (stating founded child abuse reports shall be placed on the central registry). The primary purpose of the assessment by the DHS is to protect the child named in the report, and a secondary purpose is to provide services. *Id.* § 232.71B(1)(*b*). The purpose of a central registry of founded child abuse reports is to help increase the ability of the State to confront the problem of child abuse and help identify victims or potential victims of abuse through a "single, statewide source of child abuse data." *Id.* § 235A.12.

Under this statutory scheme, the DHS promptly conducts an assessment of every report alleging child abuse. *Id.* § 232.71B(1)(*a*). The

assessment involves a comprehensive investigation and evaluation by a child protection worker, followed by a written assessment report. *Id.* § 232.71B(4) (assessment process); *id.* § 232.71B(11) (assessment report). The assessment process has numerous statutory requirements and components, and can involve the input of a multidisciplinary team, as well as others. *Id.* § 232.71B(4)-(10). An assessment of founded child abuse means the name of the child, the alleged perpetrator, and the pertinent assessment data, are placed on the central registry. *Id.* § 232.71D(3).

The comprehensive nature of the assessment process reveals the importance of accurate assessments. The existence of a central depository of the assessments to be used by various persons and agencies to combat child abuse also gives rise to separate legislative concerns for the safeguarding of the rights of others and the need for a fair and efficient assessment and registry system. *See id.* § 235A.12 ("[V]igorous protection of rights of individual privacy is an indispensable element of a fair and effective system of collecting, maintaining and disseminating child abuse information."). To this end, the legislature provided for a means for those who are the subject of a child abuse report to examine and request the correction of data or findings of an assessment claimed to be erroneous. *Id.* § 235A.19. If a timely request is filed,

> [t]he department shall provide the subject with an opportunity for an evidentiary hearing pursuant to chapter 17A to correct the data or the findings, unless the department corrects the data or findings as requested. The department may defer the hearing until the conclusion of a pending juvenile or district court case relating to the data or findings.

*Id.* § 235A.19(2)(*b*).

Considering the statutory scheme and important goals sought to be addressed, we think our legislature would not have given the DHS the responsibility to assess child abuse reports and maintain a central registry of the assessments without recognizing that the DHS possesses a special competency to carry out these duties consistent with the legislative goals. *See* Restatement (Second) of Judgments § 28 cmt. *d,* at 279 (stating that issue preclusion should not prevent relitigating an issue within the special competency of the decisionmaker in the second action). Likewise, the legislature would not have given the DHS the important duty to determine and correct errors in assessments without recognizing the existence of a special competency to perform this responsibility. Thus, it is evident that our legislature designed the correction process so that issues relating to the correction of erroneous matters in assessment reports would be decided by the DHS. *Cf. Heidemann,* 375 N.W.2d at 668 ("The legislature by enacting chapter 321B has specifically vested the department with jurisdiction to revoke a driver's license for refusal to submit to chemical testing under Iowa's implied consent statute, thereby recognizing that the department has special competency to resolve the relatively narrow issues which arise in such license revocation proceedings. The department's administrative decision-making authority should not be undercut by the fortuitous circumstance that a parallel criminal proceeding may result in an evidentiary ruling concerning compliance with implied consent requirements.").

Moreover, the nature of the statutory proceeding to correct an erroneous assessment reveals that the DHS should not be deprived of the ability to decide issues presented in the course of a correction hearing

that it might otherwise be precluded from deciding under a judicial doctrine because the issue happens to have been decided in a previous proceeding before another adjudicative body. The purpose of the legislative grant of jurisdiction to the DHS under section 235A.19(2)(*b*) to hear claims to correct data in an assessment is to correct error. Yet, the judicial doctrine of issue preclusion was not created and is not used to preclude relitigation of an issue because the decision was correct. Instead, it has an entirely different focus. It precludes relitigation of an issue not because it was correctly decided, but rather to protect litigants from the vexation of relitigating issues and to promote judicial economy by preventing unnecessary litigation of issues previously decided. *State ex rel Casas v. Fellmer*, 521 N.W.2d 738, 740-41 (Iowa 1994); *see* Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on Its Theory, Doctrine, and Practice* 113 (2001) ("The doctrine of issue preclusion rests on the premise that one court should be as capable as any other to resolve issues in dispute. Once a judgment resolves the issues after the adversary system of adjudication has run its full and fair course, the issues should not again be open to dispute by the same parties in any court. Issue preclusion not only accords with the dictates of fairness but also serves the interests of economy of judicial effort, fosters the certainty and stability of repose, and tends to prevent the anomalous situation, so damaging to public faith in the judicial system, of two authoritative but conflicting answers being given to the very same question."); Allan D. Vestal, *Res Judicata/Preclusion* 8-12 (1969) (listing as purposes of issue preclusion, finality, prevention of harassment, efficient use of the courts, and prestige of the courts/consistency). The doctrine of issue preclusion applies even if the prior decision was wrong. *See Gail v. W. Convenience*

*Stores*, 434 N.W.2d 862, 863 (Iowa 1989) ("The res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 2428, 69 L. Ed. 2d 103, 108-09 (1981))). Thus, the statutory correction procedure established by the legislature serves the goal of ensuring that the assessment data is correct, and this statutory goal is inconsistent with the doctrine of issue preclusion. The important public interest in maintaining correct records demands that the application of the doctrine of issue preclusion not be used to prevent the DHS from correcting assessment reports.

This conclusion is further supported by the language of the statute that permits the DHS to "defer the hearing" to correct an assessment "until the conclusion of the pending juvenile or district court case relating to the data or findings." Iowa Code § 235A.19(2)(*a*). Clearly, the legislature understood that courts could be litigating issues of child abuse covered in a DHS assessment during the same time the DHS may be asked to correct an error in the assessment, and it permitted the DHS to "defer the hearing" on the correction request until a decision in the court action. Yet, this discretion to defer the correction hearing does not mean the agency must defer the correction decision to the courts. We have previously recognized in *Heidemann* that an agency with special competency and jurisdiction to decide particular matters should give weight to prior court decisions on the same issues presented before the agency, but the agency must ultimately decide the issue based on the power granted by the legislature. *See Heidemann*, 375 N.W.2d at 668

(" 'Perhaps some weight should be given to the decision handed down by the court, but certainly the agency has the right to exercise the power given to it by the legislature.' " (quoting Allan D. Vestal, *Preclusion/Res Judicata Variables: Adjudicating Bodies*, 54 Geo. L.J. 857, 886-87 (1966))). The court decision can be an aid to assist the agency in its goal to maintain accurate records, and we think our legislature had this concept in mind when it authorized the DHS to delay a hearing on a correction request until the conclusion of a parallel court proceeding.

In the end, the legislative policies and goals are best served by allowing the DHS to correct its own assessment of a child abuse report free from the doctrine of issue preclusion. The DHS should consider all timely claims of error by those who are the subject of a child abuse report and decide all issues presented by a correction request. Consequently, we reverse the decision of the district court and remand the case to the DHS for a hearing on the request to correct the assessment.

**REVERSED AND REMANDED.**