# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3209

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| B.H., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 17, 2006
Filed: August 2, 2006

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

The United States appeals the district court's grant of summary judgment to defendant B.H., in the government's civil declaratory judgment action seeking to keep B.H. from reacquiring guns and ammunition. We reverse and remand.

## I.     BACKGROUND

In August of 2002, involuntary hospitalization proceedings were initiated in the Iowa District Court for Black Hawk County against B.H., a sixty-year-old resident of Waterloo, Iowa. As part of that process, a doctor evaluated the mental condition of B.H., and found him to be suffering from schizophrenia. The doctor determined that

B.H. was a threat to himself and others and recommended B.H. remain hospitalized while undergoing treatment for mental illness. A search warrant was issued in Black Hawk County pursuant to Iowa Code section 809.1(1c.),[1] and law enforcement seized thousands of rounds of ammunition, twelve handguns, eight long guns, and over 150 pounds of gunpowder from B.H.'s residence and vehicles. On September 4, 2002, following a hearing pursuant to Iowa Code section 229.12(1.),[2] a judicial hospitalization referee for the Iowa court found that B.H. was seriously mentally impaired. Iowa Code section 229.13(1.) provides that:

> If upon completion of the hospitalization hearing the court finds by clear and convincing evidence that the respondent has a serious mental impairment, the court shall order the respondent committed as expeditiously as possible for a complete psychiatric evaluation and appropriate treatment as follows:
>
> . . .

---

[1]"'Seizable property' means any of the following: . . . Property which if not seized by the state poses an imminent danger to a person's health, safety, or welfare." Iowa Code § 809.1(1c.).

[2]"At the hospitalization hearing, evidence in support of the contentions made in the application shall be presented by the county attorney. During the hearing the applicant and the respondent shall be afforded an opportunity to testify and to present and cross-examine witnesses, and the court may receive the testimony of any other interested person. The respondent has the right to be present at the hearing. If the respondent exercises that right and has been medicated within twelve hours, or such longer period of time as the court may designate, prior to the beginning of the hearing or an adjourned session thereof, the judge shall be informed of that fact and of the probable effects of the medication upon convening of the hearing." Iowa Code § 229.12 (1.).

> b. The court shall order [respondent] placed under the care of an appropriate hospital or facility licensed to care for persons with mental illness or substance abuse on an inpatient or outpatient basis.

The referee ordered that B.H. be immediately committed as an outpatient to Black Hawk-Grundy Mental Health Center for evaluation and treatment.

On October 24, 2002, B.H. petitioned the Iowa court for return of the arsenal seized from him. The court denied the request, noting that B.H. was still committed for outpatient treatment, and that return of the firearms could endanger B.H., the public, and law enforcement.

On April 10, 2003, the referee discharged B.H. from treatment. B.H. again petitioned for return of his items. On November 6, 2003, the Iowa court granted the request, relying on testimony from the executive director of the mental health center recognizing B.H.'s hobby of gun collecting and noting that return of the firearms would present no danger. The court rejected the county attorney's argument that 18 U.S.C. § 922, in conjunction with Iowa Code section 809.5, prevented the return of the guns and ammunition to B.H. Iowa Code section 809.5(1.) provides in relevant part:

> Seized property which is no longer required as evidence or for use in an investigation may be returned to the owner without the requirement of a hearing, *provided that the person's possession of the property is not prohibited by law* and there is no forfeiture claim filed on behalf of the state.

(Emphasis added). Section 922(g)(4) of 18 U.S.C. provides that "[i]t shall be unlawful for any person who has been adjudicated as a mental defective or who has been committed to a mental institution to . . . possess in or affecting commerce, any firearm or ammunition." The Iowa court reasoned that section 922(g)(4) did not apply

because (1) B.H. legally possessed the property before proceedings against him began in August 2002, (2) the property remained in Black Hawk County and was never shipped through interstate commerce since that date, (3) B.H. was never adjudged mentally defective, and (4) B.H. was never committed to a mental institution, but was instead committed for outpatient treatment, and had since been adjudged to be no longer seriously mentally impaired. The court ordered the seized property returned, barring an appeal, on December 9, 2003. The order was not appealed.

On November 19, 2003, the county attorney faxed a copy of the Iowa court's order of November 6 to the United States Attorney. There is no evidence of significant earlier interaction or communication between these officials concerning the B.H. matter. On December 5, the United States seized most of the property from the Black Hawk County Sheriff's Office, as part of an investigation into whether B.H. was in violation of 18 U.S.C. § 922(g)(4). No criminal charges were filed against B.H. because the government concluded that the firearms and ammunition had not been returned to B.H. at any time since the mental health proceedings, and thus he had not yet violated section 922(g)(4). The investigation complete, the government sought to dispose of the property, concluding it could not return the property to B.H. because it was contraband under section 922(g)(4). Thus, the government brought a civil declaratory judgment action in the United States District Court for the Northern District of Iowa, seeking a declaration to that effect.

The district court determined that collateral estoppel barred the government's request given the state court's ruling on the applicability of section 922(g)(4) to B.H. The court concluded that (1) the state court's determination was essential to its holding, and (2) the government was in privity with the county attorney in that the county attorney was the virtual representative of the government. Accordingly, the district court denied the government summary judgment, and instead granted summary judgment to B.H.

The government appeals, arguing that collateral estoppel does not bar the district court from considering whether section 922(g)(4) applies to B.H. because the government was not in privity with the county attorney. The government also asserts that the district court acted ultra vires in allowing the property to be returned to a person who cannot legally possess it.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo. Janssen v. Minneapolis Auto Dealers Ben. Fund, 447 F.3d 1109, 1113 (8th Cir. 2006). The crux of this appeal concerns the preclusive effect, if any, of the Iowa court's interpretation of 18 U.S.C. § 922(g)(4) on the subsequent action in federal court.

Though neither party raised the issue of collateral estoppel below, the federal district court held that because the government relied exclusively on the application of section 922(g)(4) as the reason B.H. was not entitled to possess the guns and ammunition, the government was collaterally estopped from relying on the statute to prohibit their return to B.H. In reaching its decision, the district court outlined the doctrine of collateral estoppel under federal law and noted that the parties disputed only whether the state court's determination regarding the applicability of section 922(g)(4) to B.H. was "essential to the prior judgment." Leonard v. Sw. Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003). The district court found that the Iowa court's interpretation of section 922(g)(4), albeit clearly erroneous, was integral to its determination that B.H. could legally possess the guns and ammunition, and held that the government was estopped from advancing that same issue in federal court. We disagree with this conclusion.

As an initial matter, if collateral estoppel is at all applicable, we believe that Iowa, and not federal, collateral estoppel law applies. The federal "full faith and credit" statute, 28 U.S.C. § 1738, governs here because the issue at hand–the

applicability of 18 U.S.C. § 922(g)(4)–was a determination made as part of a state court judgment. Section 1738 provides that the "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. Allen v. McCurry, 449 U.S. 90, 96 (1980) (holding that though federal courts may look to the common law or policy in assessing the preclusive effect of other federal court decisions, they must adhere to section 1738 when determining the preclusive effect of a state court judgment). Section 1738 applies to claims *and* issues previously determined by a state court, including state court determinations of federal law. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 n.22 (1982). Because the application of section 922(g)(4) to B.H. was an issue already determined by the Iowa court's judgment, section 1738 directs the federal district court to give that state court determination the same "full faith and credit" that other Iowa state courts would give it. Thus, we must look to Iowa's preclusion law to determine the degree of "full faith and credit" applicable in this case. This is true even though both the criminal statute upon which the state court based its judgment, and the subsequent federal declaratory judgment action, are within the exclusive jurisdiction of the federal courts.[3]

Iowa preclusion law, however, does not carry the day for B.H. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985), teaches that state preclusion law would not address the preclusive effect of a state court judgment on a claim that can be brought only in federal court. The Court instructed that for those cases, federal courts must ask if state preclusion law addresses the more general question of whether preclusion bars related actions over which the rendering court had no jurisdiction. Id. at 382 (relying on Restatement (Second) of Judgments § 26(1)(c) (1982)). "If state preclusion law includes [a] requirement of prior jurisdictional

_____

[3]Section 3231 of 18 U.S.C. precludes state court jurisdiction over "all offenses against the laws of the United States." Section 2201 of 28 U.S.C. grants "court[s] of the United States" jurisdiction over federal declaratory judgment actions.

competency, which is generally true, a state judgment will *not* have . . . preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts." Id. (second alteration in original).

Iowa preclusion law requires prior jurisdictional competency as discussed in Marrese. In a recent opinion, the Iowa Supreme Court noted an exception to applying collateral estoppel when the two courts involved have different jurisdiction. Grant v. Iowa Dep't of Human Servs., No. 04-1114, 2006 WL 1965675, at *4 (Iowa, July 14, 2006) (citing Heidemann v. Sweitzer, 375 N.W.2d 665, 667-68 (Iowa 1985)). The court opined that "the exception applies to situations in which issue preclusion is 'asserted in an action over which the court rendering the prior judgment would not have had subject matter jurisdiction.'" Id. (quoting Restatement (Second) of Judgments § 28(3) cmt. d). Where jurisdiction has been allocated to ensure that a particular issue may be brought only in a court competent to deal with it, "'after a court has incident[al]ly determined an issue that it lacks jurisdiction to determine directly, the determination should not be binding when a second action is brought in a court having such jurisdiction.'" Id. (quoting Restatement (Second) of Judgments § 28(3) cmt. d).

So, under Iowa preclusion law, use of which is required by section 1738 and Marrese, collateral estoppel does not apply in the government's federal court action. The Iowa court in this case made a determination about the applicability of section 922(g)(4) to B.H. that was *incidental* to its main determination under Iowa state law. The state court had no jurisdiction to *directly* apply section 922(g)(4) to persons because 18 U.S.C. § 3231 precludes state court jurisdiction over "all offenses against the laws of the United States." Moreover, the Iowa court would have no jurisdiction over the action in which issue preclusion is being asserted–the federal declaratory judgment action–because 28 U.S.C. § 2201 grants that jurisdiction exclusively to federal courts. The federal courts have been deemed uniquely competent not only to enforce federal criminal law, but also to "declare the rights and other legal relations" of parties seeking federal declaratory judgments. 28 U.S.C. § 2201.

We also note that had the government allowed B.H. to reacquire the guns and ammunition from the county attorney, and then *prosecuted* him under section 922(g)(4), the Iowa court's interpretation and application of that section would have been irrelevant in the subsequent criminal action. In Tafflin v. Levitt, 493 U.S. 455 (1990), the Supreme Court determined that while state courts have jurisdiction to hear Racketeer Influenced and Corrupt Organizations Act (RICO) claims, which require them to interpret and apply federal criminal statutes to find the underlying predicate offenses, those state court determinations of federal criminal law have no preclusive effect on later federal actions. "[F]ederal courts, pursuant to § 3231, would retain full authority and responsibility for the interpretation and application of federal criminal law, for *they would not be bound by state court interpretations of the federal offenses* constituting RICO's predicate acts." Id. at 465 (emphasis added).

Thus, where the Iowa court determination is no bar to a federal *prosecution* of B.H., it is untenable to think that Iowa's determination could hinder an action to *enforce* the federal law as applied to B.H.[4] The government's declaratory judgment action was an attempt to enforce the federal statute by preventing B.H. from doing what the statute proscribes.

---

[4]This court has previously found that preventing excluded persons under section 922(g)(4) from reacquiring guns and ammunition is a legitimate enforcement of that statute. See United States v. Felici, 208 F.3d 667, 670 (8th Cir. 2000) ("Federal law prohibits convicted felons from possessing guns. . . . Based upon [defendant's] status as a convicted felon, the district court could properly conclude without receiving evidence that [defendant] is not entitled to a return of the firearms."); United States v. Bagley, 899 F.2d 707, 708 (8th Cir. 1990) (denying convicted felon's motion for proceeds from sale of weapons since he was unable to legally possess the weapons under section 922(g)(4), and to allow him to profit from such a sale "would make a mockery of the law."). See also United States v. Howell, 425 F.3d 971, 976 (11th Cir. 2005) (relying on Felici, holding that "[r]equiring a court to return firearms to a convicted felon would not only be in violation of a federal law, but would be contrary to the public policy behind the law," and "[o]bviously, the courts cannot participate in a criminal offense by returning firearms to a convicted felon.").

The reasoning underlying double-jeopardy cases–that state court action must not be allowed to hinder federal law enforcement–also counsels us to conclude as we do. Abbate v. United States, 359 U.S. 187, 195 (1959). The Iowa court's interpretation and application in this case of a federal criminal statute over which the Iowa court has no jurisdiction cannot bar the government's attempt to enforce that statute against B.H. in what might aptly be considered a "quasi-criminal" proceeding. In sum, the Iowa court's decision on the section 922(g)(4) issue has no preclusive effect on the government's federal declaratory judgment action.

The government also argues that the district court exceeded its authority by committing an ultra vires act in ordering guns and ammunition returned to B.H. in violation of section 922(g)(4). This reaches the merits of the claim, which have not yet been passed on by the district court. Because we reverse the district court's conclusion that it was barred from considering the applicability of section 922(g)(4) to B.H., we remand for further proceedings consistent with this opinion without reaching this issue.

## III.  CONCLUSION

Reversed and remanded.

_____