**IN THE COURT OF APPEALS OF IOWA**

No. 14-0229
Filed May 20, 2015

**MARIE STAGG,**
        Plaintiff-Appellant,

**vs.**

**DEPARTMENT OF HUMAN SERVICES,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Marie Stagg appeals an Iowa Department of Human Services' founded child abuse assessment and the placement of her name on the child abuse registry, challenging the agency's jurisdiction. **REVERSED AND REMANDED WITH DIRECTIONS.**

Marie Stagg, Propria Persona, Philadelphia, Pennsylvania, for appellant.

Thomas J. Miller, Attorney General, and Amy Licht, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

Marie Stagg appeals an Iowa Department of Human Services' founded child abuse assessment and the placement of her name on the child abuse registry. Stagg raises several issues, including a challenge to the agency's jurisdiction. We find this issue dispositive.

## I.    Background Proceedings

In January 2012, the Iowa Department of Human Services received a report of child abuse allegedly committed by Stagg "approximately two years" earlier. Stagg lived in Philadelphia, Pennsylvania, at the time of the report and the time of the claimed incident. The department conducted an investigation, which included two summary telephone contacts with the Philadelphia Department of Human Services and a letter seeking assistance in the investigation. On the same day the letter was faxed to the Philadelphia department, the Iowa department issued a "notice of child abuse assessment: founded," naming Stagg as the perpetrator. Three weeks later, the Pennsylvania department notified Stagg it had conducted an assessment which would result in closure of its case.

Stagg appealed the Iowa notice, alleging in part that the agency lacked personal and subject matter jurisdiction because she and the child lived in Pennsylvania at the time of the claimed child abuse incident.

Following a hearing, an administrative law judge found "in October 2009 [the time of the claimed incident], Stagg lived in Pennsylvania and had custody of [the child]." The ALJ further found, at the time of the abuse disclosure more than two years later, the father "lived in the State of Iowa and had custody of [the

child]." The ALJ proceeded to address whether the department could exercise personal and subject matter jurisdiction.

The ALJ concluded Stagg failed to timely raise the issue of personal jurisdiction and, accordingly, waived it. The ALJ further concluded "the department properly asserted subject matter jurisdiction over Stagg." The ALJ acknowledged the Pennsylvania department "issued a letter to Stagg stating that after conducting an assessment, it concluded that there was not substantial evidence that Stagg's family was in need of general protective services." But the ALJ noted "[n]o evidence was submitted establishing that the [Pennsylvania] worker had access to the considerable documentary evidence and sworn testimony submitted by the parties in this administrative proceeding." The ALJ concluded "[t]he department was not precluded from concluding that Stagg committed abuse of [the child] because the State of Pennsylvania apparently concluded that Stagg's family was not in need of general protective services." In a final agency decision, the department affirmed this conclusion.[1]

Stagg sought judicial review of the final agency decision. The district court also concluded Stagg waived personal jurisdiction. The court further concluded, "Even if [the child] was a Philadelphia resident at the time the abuse occurred, the Department retains jurisdiction to investigate and conduct an assessment of out-of-state incidents of child abuse when the victim is currently an Iowa resident."

On appeal, Stagg reiterates, "At all relevant time of this specious alleged incident, [the child] and I were undisputed residents of Philadelphia,

---

[1] The department modified one aspect of the proposed decision not relevant on appeal.

Pennsylvania." Accordingly, she asserts this matter should "have been dismissed for lack of jurisdiction."

## II.    Jurisdiction

Iowa Code section 232.67 (2013), setting forth the purpose and policy behind child abuse reporting and rehabilitation, states "[c]hildren *in this state* are in urgent need of protection from abuse." (Emphasis added). Neither this portion of the Iowa Code nor chapter 235A relating to the child abuse registry contains a jurisdictional provision governing the reach of the child abuse reporting and assessment provisions.[2]    *Cf.* Iowa Code § 85.71 (addressing entitlement to workers' compensation benefits for out-of-state injuries). In the absence of a relevant statutory provision, the department points to its rule styled, "Jurisdiction of assessments," which was included in the agency record and discussed with the ALJ. The portion of the rule cited by the department provides:

> Child protection workers serving the county in which the child's home is located have primary responsibility for completing the assessment except when the suspected abuse occurs in an out-of-home placement. Circumstances in which the department shall conduct an assessment when another state is involved include the following:
> **175.35(1)** *Child resides in Iowa but incident occurred in another state.* When the child who is the subject of a report of suspected abuse physically resides in Iowa but has allegedly been abused in another state, the worker shall do all of the following:
>     *a.* Obtain available information from the reporter.
>     *b.* Make an oral report to the office of the other state's protective services agency and request assistance from the other state in completing the assessment.
>     *c.* Complete the assessment with assistance, as available, of the other state.

---

[2] Because the founded notice of child abuse assessment does not involve "a child-custody determination," the provisions of the Uniform Child-Custody Jurisdiction and Enforcement Act, Iowa Code chapter 598B are inapplicable. *See* Iowa Code § 598B.102(3).

Iowa Admin. Code r. 441-175.35(1). In the department's view, because the child lived in Iowa "at the time the allegations were reported to and investigated by the Department," the child was "properly subject to the Department's investigative powers." The agency discounts the relevancy of the child's residence at the time of the claimed incident and states, in any event, "the record does not contain evidence, and the ALJ did not find, that [the child] was a Philadelphia resident at the time of the abuse."

To the contrary, the ALJ found "Stagg lived in Pennsylvania and had custody of [the child]" at the time of the claimed incident of abuse. This finding is supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f) (setting forth standard for review of agency fact findings); *Grant v. Iowa Dep't of Human Servs.,* 722 N.W.2d 169, 173 (Iowa 2006) ("We are bound by the agency's findings of fact 'if supported by substantial evidence in the record as a whole.'"). First, Stagg introduced a portion of an Iowa district court custody order filed in 2011—long after the claimed incident of abuse—stating "the child's custody has never [previously] been considered by a court."[3] In the absence of a custody order at the time of the claimed child abuse incident, Stagg exercised sole custody of the child. *See* Iowa Code § 600B.40.[4] Second, Stagg introduced

---

[3] The court also noted, "Neither party has challenged this court's jurisdiction under the Uniform Child Custody Jurisdiction Act (Iowa Code chapter 598B) to make this initial determination as to [the child's] custody."

[4] This provision states in pertinent part:

> The mother of a child born out of wedlock whose paternity has not been acknowledged and who has not been adopted has sole custody of the child unless the court orders otherwise. If a judgment of paternity is entered, the father may petition for rights of visitation or custody in the same paternity action or in an equity proceeding separate from any action to establish paternity.

Iowa Code § 600B.40.

medical notes from an Iowa provider who saw the child in 2010 and to whom the father reported the claimed incident of abuse. The notes stated in pertinent part: "[The child] previously *had been in the custody of his mother* but now lives in Ames with . . . his father. [The child] told his father that *when he was with his mother*, Marie Stagg, last October, that there was 1 episode" of abuse. (Emphasis added). This evidence establishes the child was a legal resident of Pennsylvania at the time of the claimed abuse incident.

Because the child was a legal resident of another state at the time of the claimed abuse, the mother who had sole custody of the child was a legal resident of another state at the time of the claimed abuse, and the abuse was alleged to have occurred in another state, we are convinced rule 441-175.35(1) did not vest the department with jurisdiction to investigate the incident and issue a founded child abuse report. Application of the rule in this context would expand the department's jurisdiction to any report of abuse committed at any time in any state as long as the child is in Iowa at the time a child abuse report is made. Such a broad reading is an "irrational, illogical or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency" and is "[o]therwise unreasonable, arbitrary, capricious, or an abuse of discretion." *See* Iowa Code § 17A.19(10)(m), (n). The date the abuse was reported cannot control under the particular circumstances of this case.

Another portion of the department's jurisdictional rule highlights the problem with the State's broad assertion of jurisdiction. Rule 441-175.35(2) provides:

**175.35(2)** *Child resides in another state, but is present within Iowa.* When the child who is the subject of a report of abuse is *a legal resident of another state*, but is present within Iowa, the worker receiving the report shall do all of the following:
*a.* Act to ensure the safety of the child.
*b.* Contact the child's state of legal residency to coordinate the assessment of the report.
*c. Commence an assessment if the state of legal residency declines to conduct an investigation.*

(Emphasis added.) Under the terms of this sub-rule, the Iowa department may commence an assessment of a child who is a resident of another state only if the other state declines to conduct an investigation. Assuming for the sake of argument that the child was present in Iowa but was a legal resident of Pennsylvania at the time of the abuse, this provision would have foreclosed the department from conducting an assessment. The Philadelphia department did not "decline to conduct an investigation." As the ALJ found, the Philadelphia department initiated an assessment and closed the case only after completing the assessment. This finding was supported by substantial evidence. *See* Iowa Code §17A.19(10)(f). The Philadelphia department's letter to Stagg, admitted as an exhibit at the hearing, stated:

> As you know, I have been conducting an assessment regarding whether your family is in need of general protective services pursuant to a report we received at the Department. This letter is to advise you that my assessment has not found substantial evidence that your family is in need of general protective services as defined by the Child Protective Services Law and Regulations of the Commonwealth of Pennsylvania. We are therefore closing the case on your family.

Additionally, Iowa's child protective worker confirmed that Pennsylvania's case closure was preceded by an investigation. She testified, "I did get a phone call at a later date saying that somebody had gone out and talked with [Stagg], and that

they did not find any evidence." When Stagg asked the department worker why she failed to consider the Philadelphia letter, the worker responded, "I did not get a response while my assessment was open . . . . [M]y report had already been closed, and since that information would not change the findings of my report, it was—an addendum was not completed."

In short, under this sub-rule, the State would have been precluded from initiating a child abuse investigation even if the child was present in Iowa at the time of the claimed abuse. The fact the child was not in Iowa at the time of the incident, as this sub-rule requires, makes the case against exercise of Iowa jurisdiction even more compelling.

We conclude the department lacked subject matter jurisdiction to investigate the report of child abuse, issue a founded child abuse report, and place Stagg on the child abuse registry where Stagg and the child were Pennsylvania residents and the incident was alleged to have occurred more than two years earlier within the territorial boundaries of Pennsylvania. *Cf. Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 265 (Iowa 2001) (characterizing Iowa Code section 85.71 as subject matter jurisdiction statute); *TMC Transp. v. Davidson*, No. 04-1044, 2006 W.L. 334178, at *2 (Iowa Ct. App. 2006) (same). As Stagg asserts, "the State of Iowa and IDHS have no authority, no control, no command and no Jurisdiction of any accusations of Child Abuse that allegedly occurred in Philadelphia, Pennsylvania involving residents of that State."

Our conclusion does not leave the child without protection. It simply recognizes the state where the child and legal custodian reside at the time of the

claimed abuse and where the abuse allegedly occurred has a greater interest in pursuing the matter.

We reverse the district court's ruling upholding the department's founded notice of child abuse assessment and remand with directions to remand to the department for removal and expungement of the report and Stagg's name and identifying information from department records and from the child abuse registry.

**REVERSED AND REMANDED WITH DIRECTIONS.**