# IN THE COURT OF APPEALS OF IOWA

————————

No. 26-0627
Filed June 24, 2026

————————

**In the Interest of I.M. and C.M., Minor Children,**

**J.M., Father,**
Appellant.

————————

Appeal from the Iowa District Court for Des Moines County,
The Honorable Ty Rogers, Judge.

————————

**AFFIRMED**

————————

James L. Beres of James Beres Law Office, Burlington, attorney for
appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Ryan D. Gerling of Cray Law PLC, Burlington, attorney and guardian ad
litem for minor children.

Marlis J. Robberts of Robberts & Kirkman, L.L.L.P., Burlington, attorney
for mother.

————————

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Greer, P.J.

1

**GREER, Presiding Judge.**

A father presents a sole issue to resolve in his appeal after the juvenile court terminated his parental rights.[1] He asks that we address the juvenile court's denial of his motion to dismiss the petition to terminate his parental rights to his two children, I.M. and C.M., born in 2018 and 2020, respectively. After the children were adjudicated as children in need of assistance (CINA), the juvenile court entered an October 2025 order following a permanency hearing, finding that the option of terminating the father's rights was not in the best interests of the children. Instead, it granted sole custody to the mother and ordered concurrent jurisdiction with the district court so the court could address the parents' dissolution of marriage action. Several days later, the State petitioned to terminate the father's parental rights. Prior to the termination trial, the father moved to dismiss the petition arguing that issue preclusion applied. Because the juvenile court denied the father's motion to dismiss, the father now appeals arguing the juvenile court misapplied the law.

Pointing to Iowa Code section 232.111(1) (2025),[2] the State argues that it was not prohibited from filing a petition to terminate the father's rights, issue preclusion did not apply, and the juvenile court properly denied the motion to dismiss. On our review, we find there was no legal error in the denial of the motion to dismiss. We therefore affirm.

---

[1] In his petition on appeal, the father appeals from grounds related to the CINA adjudication under Iowa Code section 232.96A(3)(b), (4), and (14) (2024). He has not appealed from the grounds established by the State in the termination proceedings.

[2] This section provides that, among others, "the county attorney may file a petition for termination of the parent-child relationship and parental rights with respect to a child." *See* Iowa Code § 232.111(1).

## I. Background Facts and Proceedings.

The juvenile court took up the father's motion to dismiss at the beginning of the February 2026 termination trial and found that:

> If [the judge] had set this hearing within a week or within a month of that termination petition being filed, I think that there would be a very good argument that this should be dismissed because that issue had just been litigated. That issue is material not only to what the permanency decision was, but it's material to the termination proceeding. If I find all the grounds exist for termination but I find it's not in the kids' best interest, then the termination petition would have to fail.

> And so that issue is the one that's to determine with regard to this motion, I believe, and their best interest is static. We don't have a situation where the hearing on this termination petition happened, you know, within a few days of the permanency hearing or within a week or a month. Instead, we're nearly—or just about four months afterwards. A lot can happen in four months, particularly when we're talking about children.

For some background, these children were adjudicated CINA on July 19, 2024. They were previously placed in the care and custody of their mother and removed from their father's care and custody in April. Removal occurred under an emergency order when it was alleged that the father had sexually abused I.M. who was then five years old. The father has not had visits with I.M. since May 2024 and with C.M. since December 2024.

A dispositional hearing was held in September 2024, and because of a newly reported incident of sexual abuse between the father and C.M. that had occurred pre-juvenile court filing, the Iowa Department of Health and Human Services (HHS) requested that visitation be suspended between C.M. and the father. The juvenile court instead ordered the father to undergo a mental-health evaluation. The court stated it would revisit the visitation issue, if necessary, but noted that C.M. had not yet started his counseling. But the juvenile court did find "clear and convincing evidence that [I.M.] was

3

sexually abused while under the direct control of [the father], either at his hands or with his cooperation."[3]  A no-contact order existed between the father and I.M. and remained in place through the termination of parental rights trial.

Several dispositional review hearings occurred, and in the February 2025 review hearing order, the juvenile court confirmed that visitation with C.M. and the father be suspended.  C.M.'s behaviors were regressing because of the contact and his counselor recommended visits cease until it was appropriate to begin interactions at a therapeutic level.

In August, a jury acquitted the father of the charges of sexual abuse in the second degree related to I.M.

A permanency hearing was held over three days: March 27, September 9, and October 16.  But before the last day of the permanency hearing, the juvenile court granted concurrent jurisdiction with the district court and reasoned:

> The State is asking the Court to change the Permanency goal to adoption.  Based strictly on the two days of testimony submitted, the Court does not feel that the evidence up to this point supports that recommendation.  Should the Court instead grant a six-month extension where the father engages in services, or should the Court award sole custody to the mother, the matter must be transferred to the District Court for a final custody determination.  The need for a District Court order would either be upon entry of the Court's initial permanency order, or six months later upon entry of a final permanency order.  The Court notes that this case would not qualify for Bridge Order under 232.103A(1)(f).  Again, unless a termination of parental rights is granted, this matter must

---

[3] There were allegations that the father's paramour might have been involved in some manner with the sexual abuse of I.M.

ultimately be brought before the District Court. That process can take months.

> The parties have the benefit of a trial date in District Court, whereby these matters can be adjudicated in a timely manner. That is in the best interest of the children herein. The Juvenile Court is required to have an initial permanency hearing within 12 months of removal. This case is currently in month 17, and it reasonable to anticipate the permanency hearing will not conclude on the third day of testimony set October 16.

The permanency hearing did conclude on the third hearing day, and on October 29, the juvenile court issued a permanency order denying the State's request to change the permanency goal to termination of the father's parental rights and adoption, which was supported by the mother, HHS, and the guardian ad litem. Recognizing that the father's focus was on the criminal charges filed against him, the juvenile court still maintained that "[i]f you do nothing while your child is adjudicated a child in need of assistance, as [the father] has done, you do so at your own peril. Families First does not feel that they can work with [the father] due to his victim narrative and controlling nature." The juvenile court considered the options available to it, which were designated as (1) a six-month extension for the father to work toward reunification; (2) termination of the father's parental rights; and (3) sole custody to the mother with concurrent jurisdiction with the district court. Moving the permanency goal to sole custody to the mother, the juvenile court determined:

> The placement of the children in their mother's care continues to be necessary. Proceedings for termination of parental rights should not be commenced even though the children in interest cannot safely be returned home because of their financial interests can remain protected and it is not possible for this Court to make the requisite findings that a termination would be in the children's best interest. There was a traditional parent/child relationship shared between [the father] and the children prior to April 2024. There is a possibility that these relationships could

5

heal over time. An award of sole custody protects the best interests of the children.

The court set a "permanency review hearing" to be held within six months "to determine whether this disposition should be continued, modified, or terminated. Concurrent Jurisdiction [was] granted to the District Court for the purpose of establishing a permanent custodial order."

But, just days later, on November 3, the State petitioned for termination of the father's parental rights. The petition referenced the October 29 ruling related to the changed permanency goal but noted "[t]he State respectfully disagrees." Ultimately, the termination trial was set for February 2026, but a judge different than the one that oversaw the permanency trial was assigned because the previous judge's term in the county was over. The newly assigned judge determined that the State established grounds for termination of the father's parental rights under Iowa Code section 232.116(1)(d) and (f). It specifically found:

> The termination of parental rights of [the father] as to [I.M.] and [C.M.] is in the best interest of both children at this time. The Court acknowledges that at the time of the permanency hearing in 2024 the Court determined the opposite was true. The Court notes, however that significant time has passed and circumstances have changed. In issuing its permanency ruling, the CINA court relied upon belief a pending dissolution proceeding in District Court would litigate issues relating to provision and care of the children. That has not occurred in the nearly four months since. Those proceedings have, in essence, been stayed for litigation of this cause. The CINA court additionally relied, in part, upon fact that the mother was maintaining her parental rights and that the father could contribute to the children financially if his rights remained intact.

> Time has passed and the children continue to exhibit emotional distress at the thought of contact with their father. As the State cites in its argument, Iowa Code Section 232.116(2) states: "In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for

6

furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." A child's need for permanency should be one of the paramount considerations in the best interests analysis. A child's need for concrete permanency is important.

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(d) and (f). The father appeals. We turn to the issue that is presented for our review.

## II. Standard of Review.

While rulings on the application of issue preclusion in a particular case are reviewed for an abuse of the district court's discretion, *see Fischer v. City of Sioux City*, 654 N.W.2d 544, 550 (Iowa 2002), a "determination of whether the elements of issue preclusion are satisfied is a question of law." *Clark v. State*, 955 N.W.2d 459, 463–64 (Iowa 2021) (cleaned up). Thus, our review is for legal error. *Id.*

## III. Analysis.

We must determine whether issue preclusion applies in this case such that dismissal of the termination petition was required. "Issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (cleaned up). "The term 'issue preclusion' is used interchangeably with the term 'collateral estoppel.'" *Dorsey v. State*, 975 N.W.2d 356, 361 (Iowa 2022) (citation omitted); *see also* Restatement (Second) of Judgments § 27 (A.L.I. 1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential

7

to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

Issue preclusion applies when the party establishes the following elements:

> (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Barker v. Iowa Dep't of Pub. Safety*, 922 N.W.2d 581, 587–88 (Iowa 2019) (citation omitted).

The father advances case authority that he contends supports his position that the termination petition was required to be dismissed. The problem with the father's position, however, is that the application of issue preclusion presumes that the issue was litigated to a final judgment.

At the termination trial in February 2026, when discussing the motion to dismiss, the juvenile court expressed a reservation about the immediate filing of the termination petition following the juvenile court's October 2025 permanency ruling. We understand those reservations as only five days passed between the permanency order and the filing of the petition, and because the State noted in the petition that it "disagree[d]" with the permanency ruling. From that position, the proper course might have been an appeal of the permanency ruling. *See In re E.R.*, 973 N.W.2d 889, 893–94 (Iowa Ct. App. 2021). Still, we find no prohibition in the statutes or the case law that would have prevented the State from immediately petitioning for termination of the father's rights as a means to modify the permanency

ruling.  It just might not be practical or successful if the two hearings are held close in time.

But even more to the point, the October permanency order required a permanency review hearing to be held within six months of the order "to determine whether this disposition should be *continued, modified, or terminated*" and concurrent jurisdiction was granted to allow for the establishment of a permanent custodial order.  (Emphasis added).  In essence, when the State filed its petition to terminate the father's rights, it acted to modify the existing permanency order.  Several months went by before the termination trial was held.

When modifying a permanency order, "our responsibility . . . is to look solely at the best interests of the children from whom the permanency order was previously entered." *Id.* at 893 (cleaned up).  "Part of that focus may be on parental change, but the overwhelming bulk of the focus is on the children and their needs." *Id.* at 893–94 (citation omitted).  "The entire premise of issue preclusion is that once an issue has been resolved, there is no further fact-finding function to be performed." *Grant v. Iowa Dep't of Hum. Servs.*, 722 N.W.2d 169, 174 (Iowa 2006) (citation omitted); *see also id.* at 174–78 (noting the legislature provided a means for those who are the subject of a child-abuse report to examine and request the correction of data or findings of an assessment claimed to be erroneous, so issue preclusion would not apply to dismiss the application to correct the initial assessment).  The permanency stage of the CINA proceedings also presumes that there may be additional factual findings that determine the best interests of the children prior to the time the case is closed.  *See* Iowa Code § 232.104.  Thus, we do not see how issue preclusion can apply here in light of the statutory scheme involving a CINA case and the existing case law, which allows for

9

modification of the juvenile court's order based on the evolving best interests of the children.

Finally, as the State argues, the issues in an Iowa Code section 232.104 permanency hearing and a section 232.116 termination of parental rights hearing are different:

> The plain language used by these two code sections is not identical, indeed the termination code section is far more descriptive as to what facts and circumstances the court must take into consideration. There are far more considerations that are part of the analysis under Iowa Code section 232.116(2) than the general finding required to transfer custody at permanency.

As a panel of our court noted when addressing issue preclusion in a juvenile court termination case, that doctrine "should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." *In re M.R.A.*, No. 04-1207, 2004 WL 2168643, at *2 (Iowa Ct. App. Sep. 29, 2004) (citation omitted); *see also Spiker v. Spiker*, 708 N.W.2d 347, 356 (Iowa 2006) (explaining that the res judicata standard, including issue preclusion, is relaxed in child custody matters "because our goal in such cases is always to serve the best interests of the child"). Based upon the case law and our statutes, issue preclusion did not apply and the motion to dismiss was properly denied.

## IV. Conclusion.

We find the juvenile court did not err by denying the motion to dismiss. We affirm the termination of the father's parental rights.

**AFFIRMED.**