Elois Anne GARDNER, Appellant,

v.

HARTFORD INSURANCE ACCIDENT & INDEMNITY CO.; Hartford Casualty Insurance Co.; Hartford Insurance Company of the Midwest; Hartford Fire Insurance Co.; and Hartford Life & Auto Accident Co. d/b/a ITT Hartford Insurance Group, Appellees.

No. 01–1740.

Supreme Court of Iowa.

Feb. 26, 2003.

Rehearing Denied April 18, 2003.

Richard G. Book of Huber, Book, Cortese, Happe & Brown, P.L.C., Des Moines, for appellant.

Frank A. Comito, Patrick J. Hopkins and Kent A. Gummert of Gaudineer, Comito & George, L.L.P., Des Moines, for appellees.

STREIT, Justice.

Elois Gardner seeks to bring a tort action for bad faith denial of benefits against her employer's workers' compensation insurer, Hartford Insurance Accident & Indemnity Company. Hartford argues Gardner's tort suit is barred by the earlier workers' compensation contested case settlement Gardner agreed to under Iowa Code chapter 85. Hartford also asserts Gardner failed to exhaust her administrative remedies. The district court agreed issue preclusion applies in this case, but found Gardner did not fail to exhaust her administrative remedies. Gardner appeals and Hartford cross-appeals. Hartford also asserts we must dismiss this appeal for untimeliness. Because we find issue preclusion bars Gardner's tort claim, we affirm the district court's grant of summary judgment. Our holding renders it unnecessary for us to address the cross-appeal.

## I. Background and Facts

Elois Gardner suffered a cumulative injury to her left shoulder as the result of years of wear and tear while working for Donnelly Marketing Incorporated. She asserted the injury date was January 1996. Donnelly's workers' compensation carrier is ITT Hartford. Initially, Hartford paid workers' compensation benefits to Gardner.

On April 17, 1996, Gardner had surgery on her left shoulder. After the surgery, Gardner's condition worsened. Hartford arranged for the management of Gardner's case by Susan Fletcher–White of Industrial Disability Management Incorporated. Gardner was suffering from headaches and a CT scan was recommended. Either Hartford or Fletcher–White canceled the scan. Gardner underwent a bilateral MRI of her shoulders.

On July 16, 1996, Gardner's primary care physician recommended Gardner have exploratory surgery to determine the problem in her shoulder. On July 24, Hartford told Fletcher–White they would not authorize the second surgery unless Gardner obtained a second opinion. It appears Gardner was not informed if she proceeded with the second surgery her workers' compensation benefits would be canceled for unauthorized treatment. Either Hartford or Fletcher–White tried to cancel the second surgery. However, Gardner went ahead with it on July 31. Hartford terminated Gardner's workers' compensation benefits.

Gardner filed a workers' compensation action asserting Hartford wrongfully terminated her benefits without reasonable or probable cause. She also raised issues regarding payment of medical expenses and the extent of permanent disability. In a pre-hearing conference report signed by Gardner and Hartford, the parties identified their dispute as encompassing virtually all of the controversies that had arisen since Gardner's injury in January 1996. Specifically, the parties disagreed on the

issue of whether the claimed injury arose because of her employment.

In April 1998, the parties filed an application with the Iowa Industrial Commissioner for approval of a contested case settlement pursuant to Iowa Code section 85.35 (1997). They stated a "bona fide" dispute existed under section 85.35(8) regarding whether a substantial portion of the claimed disability "related to physical or medical conditions other than those caused by the injury." The parties jointly submitted medical documentation to support a finding of a bona fide dispute. The industrial commissioner approved the settlement.

In July 1998, Gardner filed a tort suit against Hartford for bad faith denial of workers' compensation benefits and negligent medical care. Hartford filed a motion for summary judgment arguing Gardner's claim for bad faith denial of benefits was barred by the doctrine of issue preclusion. It also asserted Gardner failed to exhaust administrative remedies on the issue of medical treatment. The court initially granted Hartford's motion upon both asserted grounds.

On August 4, 2000, Gardner filed a motion for amendment of findings and substitution of judgment pursuant to Iowa Rule of Civil Procedure 1.904(2) (former rule 179(b)). Gardner challenged the district court's application of the doctrine of issue preclusion and the court's determination she failed to exhaust her administrative remedies. The court confirmed its earlier determination that Gardner's claim was barred by issue preclusion. The court, however, also ruled Gardner had not failed to exhaust her administrative remedies. Gardner appeals and Hartford cross-appeals.

## II. Scope of Review

■ We review the district court's grant of the motion for summary judgment for correction of errors of law. *Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 547 (Iowa 2002). Summary judgment is appropriate when the record shows "there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## III. The Merits

On appeal Gardner argues the court erred in granting summary judgment based upon its finding her bad faith tort claim was barred by the doctrine of issue preclusion. Hartford cross-appeals asserting the court erred in denying the portion of its motion for summary judgment claiming Gardner failed to exhaust her administrative remedies. Because we find the matter of issue preclusion to be determinative of this case, it is unnecessary to address Hartford's cross-appeal. Before turning to the main issue, we briefly address Hartford's contention Gardner's appeal is untimely and must be dismissed.

### A. Motion to Dismiss Appeal

Hartford argues Gardner did not appeal within thirty days from final judgment as required by Iowa Rule of Appellate Procedure 6.5(1). Hartford asserts it was inappropriate for Gardner to file a 1.904(2) motion after the court sustained Hartford's motion for summary judgment dismissing Gardner's petition. Specifically Hartford contends Gardner did nothing more than rehash the legal issues raised and decided adversely to her. *See Explore Info. Servs. v. Iowa Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001) (holding rule 1.904(2) motion does not toll time for appeal where motion merely rehashes legal issues raised and decided adversely to movant in prior motion to adjudicate law points). Hartford asks us to dismiss this appeal as untimely.

The district court granted Hartford's motion for summary judgment on July 26, 2000. Gardner then timely filed a rule 1.904(2) motion asking the court to amend its findings. On October 4, 2001, the court ruled on Gardner's 1.904(2) motion. Twenty-five days later, Gardner filed her notice of appeal. Hartford argues Gardner's appeal is untimely because she did not file notice of appeal within thirty days from the court's order granting summary judgment. We disagree and decline to dismiss Gardner's case based upon this ground.

In *Orr v. Iowa Public Service Co.*, we held a motion to reconsider the granting of summary judgment was not authorized by rule 1.904(2). 277 N.W.2d 899, 900 (Iowa 1979). However, this case was superseded by rule as stated in *Peoples Trust & Savings Bank v. Baird*, 346 N.W.2d 1, 3 (Iowa 1984). In *Peoples Trust*, we held rule 1.981 (formerly rule 237(c)) allows the filing of a rule 1.904(2) motion after the court renders summary judgment upon the entire case in accordance with the legislature's 1980 amendment of Iowa Rule of Civil Procedure 1.981. *Peoples Trust*, 346 N.W.2d at 3. Under such circumstances, a notice of appeal is timely if filed within thirty days of the ruling on what was, in essence, a rule 1.904(2) motion. *See id.*

■ In the case before us, the district court rendered summary judgment upon the entire case. Because Gardner filed her notice of appeal within thirty days from the entry of the court's ruling on the 1.904(2) motion, her appeal is timely. Because this case involves a summary judgment ruling, it is unnecessary for us to examine the basis for the 1.904(2) motion to determine if it "raised factual issues tried to the court" or raised an issue the district court failed to resolve as required in *Explore*. *See Explore Info. Servs.*, 636 N.W.2d at 57. We now turn to the merits of this appeal.

## B. Issue Preclusion

■ Hartford argues Gardner is barred from maintaining her tort action for bad faith under the doctrine of issue preclusion. Issue preclusion provides once a court has decided an issue of fact or law necessary to its judgment, the same issue should not be relitigated in later proceedings. *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). The purpose of issue preclusion is to protect litigants from the "vexation of relitigating identical issues with identical parties or those persons with a sufficient connective interest to the prior litigation." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 655 (Iowa 2002) (quoting *State ex rel. Casas v. Fellmer*, 521 N.W.2d 738, 740–41 (Iowa 1994)). The doctrine also promotes judicial economy. *Id.* The doctrine of issue preclusion is applicable if four factors are satisfied: (1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to the resulting judgment. *Id.*

Here, Hartford attempts to use the doctrine defensively as a shield against Gardner's bad faith tort suit. Hartford is relying upon the findings of the industrial commissioner as conclusively establishing issues that Gardner must prove as an element of her claim. *See Hunter*, 300 N.W.2d at 123. Given the issues involved in the former and present actions, the district court found the key issue in both actions was whether Hartford had a reasonable basis for denying Gardner's claims for workers' compensation benefits. Find-

ing the four requirements of issue preclusion satisfied, the district court determined Gardner's claim for bad faith was barred by that doctrine. We must determine whether the elements of issue preclusion are present in the case before us to justify application of the doctrine to bar Gardner's tort claim.

We recently examined whether an injured worker could pursue a tort action for bad faith against his employer's workers' compensation carrier. *McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323 (Iowa 2002). In *McIlravy*, after the insurance company denied benefits, the employee filed a contested case proceeding with a demand for penalty benefits. *Id.* at 327. The industrial commissioner awarded benefits to McIlravy and assessed a penalty against the insurance company for unreasonable denial of benefits. *Id.* McIlravy then filed a tort action against North River for bad faith denial of benefits. *Id.* North River moved for summary judgment arguing McIlravy's action must be dismissed because the prior workers' compensation claim was fairly debatable. *Id.* McIlravy moved for partial summary judgment asserting the element of the bad faith tort claim requiring him to prove lack of a reasonable basis for the denial was established as a matter of law under the doctrine of issue preclusion when the commissioner awarded penalty benefits in the earlier workers' compensation action. *Id.*

We resolved *McIlravy* based upon the recognized exceptions to issue preclusion. In one of the exceptions, issue preclusion does not apply where

> The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary

has a significantly heavier burden than he had in the first action.

*Id.* at 330 (citing *Heidemann v. Sweitzer*, 375 N.W.2d 665, 667–68 (Iowa 1985)). In the prior administrative procedure, the burden was on North River to prove that its denial of benefits had a reasonable basis. *Id.* In the later tort suit, McIlravy had the burden to prove bad faith in North River's denial of benefits. *Id.* We held that issue preclusion was inapplicable to the case "[g]iven the different burdens of proof between the two penalty mechanisms and the two different stages of the North River/McIlravy dispute." *Id.*

For several reasons, the facts of the case before us are not to be confused with *McIlravy*. In *McIlravy*, the injured employee sought to use the doctrine of issue preclusion offensively. As discussed above, in the present case, Hartford seeks to use the doctrine defensively. "Although offensive use of issue preclusion is allowed in Iowa ... it is more restrictively and cautiously applied than defensive issue preclusion." *Buckingham v. Fed. Land Bank Ass'n*, 398 N.W.2d 873, 876 (Iowa 1987). We scrutinize cases of offensive issue preclusion more closely by examining whether: (1) the party in the second action had a full and fair opportunity to litigate the issue in the first action; and (2) any other circumstances are present which would justify granting the party the opportunity to relitigate those issues. *Harrison v. State Bank of Bussey*, 440 N.W.2d 398, 401 (Iowa App. 1989). *See generally* Restatement (Second) of Judgments § 88 (1982) (discussing seven circumstances which may prevent the application of issue preclusion where mutuality of parties is lacking).

Additionally, unlike in *McIlravy*, we note none of the general exceptions to issue preclusion are applicable in the case before us. Gardner urges two of the ex-

ceptions to the doctrine of issue preclusion apply. *See generally* Restatement (Second) of Judgments § 28 (describing the five exceptions to the general rule of issue preclusion). First, Gardner argues she was not afforded an opportunity to litigate before the industrial commissioner. Gardner also contends it was not foreseeable that the contested case settlement would operate as a bar to her later tort action. For the reasons discussed below, both of Gardner's arguments are without merit.

 Gardner was not denied an opportunity to argue her factual and legal claims within the context of the workers' compensation settlement. A refusal to apply issue preclusion because Gardner allegedly lacked a fair opportunity to litigate the issue of a reasonable basis in the settlement agreement "should not occur without a compelling showing of unfairness." Restatement (Second) of Judgments § 28 cmt. *j.* The facts do not support such a finding. Gardner was represented by counsel both before and throughout the initial workers' compensation action. In that action, both Gardner and Hartford admitted a good faith dispute existed as to whether or not Gardner was entitled to workers' compensation benefits. The commissioner examined evidence offered by both parties regarding the origin, nature, and extent of Gardner's claimed injury. All relevant medical documents were submitted to the industrial commissioner for consideration.

Gardner alone chose her route of recovery. Unlike in *McIlravy*, by agreeing to the settlement, Gardner stipulated to the existence of a bona fide dispute between the parties. Despite the numerous avenues Gardner could have pursued to resolve her workers' compensation claim, she opted to follow Iowa Code section 85.35. In contrast to other provisions of chapter 85, section 85.35 requires the parties to

agree and the industrial commissioner to find a bona fide dispute exists between them. By agreeing to the settlement, Gardner stipulated that a bona fide dispute existed between the parties. Gardner argued her position for two years before the parties submitted the contested case settlement to the industrial commissioner. Surely she had the incentive and time necessary to argue her case.

 Similarly, Gardner's claim that it was not foreseeable that her agreement to settle under section 85.35 would function as a bar to a later tort suit is likewise unconvincing. Issue preclusion should not apply where it was unforeseeable that an issue would arise in the context of a later action; however, such instances are rare. *See id.* § 88 cmt. *i.* Gardner does not argue a subsequent change in law or in fact rendered it unforeseeable that the issue of a reasonable basis would arise in her later tort action. *See id.* She does not now claim her attorney or the industrial commissioner misled her as to the effects of the settlement. Inescapably entwined in the issue decided by the industrial commissioner, i.e., whether a bona fide dispute existed, was the matter of whether Hartford had a reasonable basis for its denial of benefits. Gardner cannot now argue it was unforeseeable when the parties agreed to the settlement that the issue of a reasonable basis would arise in the context of a later tort action for bad faith. The same facts and issues inherent in the settlement are material to the tort action. Having determined that none of the exceptions to the doctrine of issue preclusion apply in this case, we now turn to examine whether the requisite elements of issue preclusion are present.

 We begin with the facts and legal claim involved in the former settlement. Gardner litigated a claim for bene-

fits that ultimately resulted in a contested case settlement with Hartford. The parties filed the settlement with the industrial commissioner pursuant to Iowa Code section 85.35. This section provides in relevant part:

> The parties to a contested case ... may enter into a settlement of any claim arising under this chapter ..., providing for final disposition of the claim, provided that no final disposition affecting rights to future benefits may be had when the only dispute is the degree of disability from an injury for which an award for payments or agreement for settlement under section 86.13 has been made. The settlement shall be in writing and submitted to the workers' compensation commissioner for approval. The settlement shall not be approved unless evidence of a bona fide dispute exists....

Iowa Code § 85.35. The commissioner may find a bona fide dispute exists when

> the claimant, in a matter over which the workers' compensation commissioner has jurisdiction, is represented by an attorney licensed to practice in this state, and the claimant and the claimant's attorney agree that evidence of a bona fide dispute exists as to the enumerated factors of Iowa Code section 85.35, and the parties set forth a specific statement of facts of the bona fide dispute and allege that such facts are true, the professional statement of counsel for the parties shall constitute prima facie evidence that a bona fide dispute exists as required by Iowa Code section 85.35.

Iowa Admin. Code r. 876—6.1(1) (1998). There are eight statutory grounds upon which the commissioner may find a bona fide dispute exists. *See* Iowa Code § 85.35. A bona fide dispute is one that is "made or carried out in good faith; sincere; authentic; genuine." The American Heritage Dictionary ____ (4th ed.2000). Relevant to the issue before us is Iowa Code section 85.35(8) which provides a bona fide dispute exists as to whether "[a] substantial portion of the claimed disability is related to physical or mental conditions other than those caused by the [work-related] injury." Iowa Code § 85.35(8).

Both Gardner and Hartford presented evidence to the industrial commissioner. The documents submitted to the commissioner show Gardner's claim which was the subject of the contested case settlement, included all of the disputes which are now the subject of her bad faith claim. The evidence consisted of the reports of six physicians involved in varying degrees with Gardner's case. The reports addressed the following information regarding Gardner's claimed injury: physical and mental evaluations, medical diagnoses, proposed treatment, work recommendations, and potential cause of injury. According to the reports, Gardner initially sought treatment for chest pains, not her claimed shoulder injury. After the injury date of January 1996, Gardner did not work during the subsequent months. Dr. Donna Bahls' February 18, 1998, report stated Gardner started working approximately five hours per day at a pizza restaurant and she continued to bartend. Bahls also stated a bone scan and MRI conducted after the arthroscopic surgery did not show any specific medical problem. One of the medical reports dated March 11, 1998, stated Gardner would continue to work. The reports contained the following information regarding the cause of Gardner's claimed injury. In January 1996, one doctor noted, "Most likely, this is a myofascial pain syndrome[1] and it may be

---

1. Myofascial pain syndrome is one related to the fasciae of muscles. Webster's Medical

work related. There is no way to know with certainty, but we certainly have no better candidate. Her job is repetitive, needless to say." This statement is the extent of the record on the potential relation of the claimed injury to Gardner's working conditions. After considering all of the evidence, the commissioner found a bona fide dispute existed as to whether "[a] substantial portion of the claimed disability is related to physical or mental conditions other than those caused by the [work-related] injury." *Id.*

When the commissioner considered the contested case settlement, she was required by the statute to determine whether a good faith dispute existed. The commissioner's determination under section 85.35 required her to find a dispute existed at a minimum to one of the eight matters listed in the statute. Whether Gardner's injuries were caused by or somehow related to Gardner's employment was material and relevant to the commissioner's determination of whether a bona fide dispute existed. *Id.* The commissioner's finding a good faith dispute existed as to whether her disability was related to the workplace fundamentally affected Gardner's claim for benefits and the benefits she received in the settlement.

 Turning to the present tort action, Gardner tries to bring a cause of action for bad faith denial of workers' compensation benefits. To be successful, she must prove the following: (1) the absence of a reasonable basis for denial of the claim; and (2) the defendant knew or had reason to know that its denial was without a reasonable basis. *Thompson v. United States Fid. & Guar. Co.,* 559 N.W.2d 288, 291 (Iowa 1997). Hartford had the right to contest a claim for benefits that is "fair-

ly debatable" without being subject to a bad faith tort claim. *See Morgan v. Am. Family Mut. Ins. Co.,* 534 N.W.2d 92, 97 (Iowa 1995). "Where an objectively reasonable basis for denial of claim actually exists, the insurer cannot be held liable for bad faith as a matter of law." *Id.* A claim may be fairly debatable either as to a matter of fact or law. *Id.* We must determine whether the elements of issue preclusion exist in the case before us to bar Gardner's present tort claim.

To begin our issue preclusion analysis, we first must examine whether the issue determined by the contested case settlement is identical to the issue to be determined in Gardner's claim for bad faith. *See United Fire & Cas. Co.,* 642 N.W.2d at 655. In the former, the industrial commissioner determined a good faith dispute existed as to whether Gardner's claimed disability was related to physical or mental conditions other than those caused by the work-related injury. In other words, by negotiating and signing the contested case settlement, both parties acknowledged there was a good faith dispute as to whether Gardner's injuries were "caused by or related to the working environment or the conditions of employment." *See McIlravy,* 653 N.W.2d at 331. Though the tort of bad faith is not within the jurisdiction of the industrial commissioner, the fairly-debatable issue itself was directly before her and was integral to the contested case settlement. *See Reedy v. White Consol. Indus.,* 503 N.W.2d 601, 603 (Iowa 1993) (industrial commissioner lacks jurisdiction over bad faith denial of benefits tort claim). The industrial commissioner's finding Gardner's claim was fairly debatable and the existence of a good faith controversy as to whether there was a non-

---

Desk Dictionary 460 (1986). Fasciae are "sheet[s] of connective tissue covering or binding together body structures." *Id.* at 236.

They enclose muscles or muscular groups and separate muscle layers. The American Heritage Dictionary 491 (2d ed.1985).

work-related cause of Gardner's injury is simply an alternative way of finding Hartford may have had a reasonable basis for denying Gardner's claim.

The facts and issues decided in the settlement are identical to the present issues in the tort suit. In the former settlement, the issue of whether a bona fide dispute existed, i.e., whether the claim was fairly debatable, was material and relevant to the industrial commissioner's determination of whether the settlement should be approved. *See id.* (issue preclusion is applicable if the issue was material and relevant to the disposition of the prior action). In the initial action for workers' compensation benefits, had the evidence shown there was no dispute as to Gardner's entitlement to benefits, the parties would not have been allowed a contested case settlement on the ground asserted and the commissioner would not have approved it. In the bad faith action, if Gardner could show Hartford denied her claim despite the absence of a reasonable basis for the denial, she could succeed on her bad faith claim.

In sum, instead of rejecting the case settlement, Gardner now wants to frame the same argument with a different label asserting bad faith. In the settlement, Gardner agreed there was a genuine dispute as to the cause of her claimed disability. The industrial commissioner's finding of a bona fide dispute constituted a finding that the issue of causation was fairly debatable. The commissioner's approval of the parties' contested case settlement is a final adjudication on the matter. *See Rigby v. Eastman,* 217 N.W.2d 604, 606 (Iowa 1974). An adjudication by an administrative agency has preclusive effect. *Polk County Secondary Roads v. Iowa Civil Rights Comm'n,* 468 N.W.2d 811, 817 (Iowa 1991). The issues raised and decided in the settlement are identical to the central issue in the bad faith tort claim. Both Hartford and Gardner were parties in interest in the case settlement before the industrial commissioner. They each had the opportunity to argue factual issues and legal claims in the contested case settlement. Consequently, Gardner's agreement to the settlement under Iowa Code section 85.35 precludes her from again arguing lack of a reasonable basis in the form of a bad faith tort action.

## IV. Conclusion

We affirm the district court's grant of summary judgment based upon the ground that Gardner's claim for bad faith is precluded by the contested case settlement. Because we find issue preclusion bars Gardner from maintaining her tort action, we do not address Hartford's cross-appeal.

**AFFIRMED.**