# IN THE SUPREME COURT OF IOWA

No. 35 / 05-0375

Filed November 9, 2007

**CHARMAINE HUNTER**,

    Appellant,

vs.

**CITY OF DES MOINES MUNICIPAL HOUSING
AUTHORITY, RUSSELL UNDERWOOD,
THERESA TAYLOR** and **TANGELA WEISS**,

    Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Douglas E. Staskal, Judge.

Tenant and landlord seek further review in an action involving a claim and counterclaim for breach of a lease. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Robert A. Wright, Jr. of Wright & Wright, Des Moines, for appellant.

Michael F. Kelley, Des Moines, for appellees.

**CADY, Justice.**

This appeal is a culmination of a long and complex dispute between a landlord and a tenant. It began as an eviction action and eventually returned to district court as a claim and counterclaim for damages and other relief. The district court granted judgment for the landlord. The tenant appealed, and we transferred the case to the court of appeals. The court of appeals reversed the decision of the district court and remanded the case for a determination of damages and entry of judgment for the tenant. On our review, we vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Background Facts and Proceedings.

Charmaine Hunter leased a house in Des Moines from the Des Moines Municipal Housing Agency (DMMHA). The DMMHA is a state agency that works in conjunction with the federal government to provide low-income housing for qualifying tenants. The term of the lease was for thirty days, beginning on November 1, 1988. The lease, however, automatically renewed for successive one-month terms. Among other terms, the lease required Hunter to accurately report her income and family composition each year and did not allow any unauthorized person to live in the dwelling unit. The DMMHA used this information to determine the amount of Hunter's rent and her continued eligibility for assisted housing, as well as to ensure the size of the dwelling was appropriate for the number of residents. Based on the information Hunter submitted, monthly rent was set at $12.

Hunter was permitted under the rental agreement to terminate the lease with fifteen days' notice. The DMMHA, however, was only permitted to terminate or refuse to renew the lease if the tenant committed a serious or repeated violation of material terms of the lease.

Such a violation specifically included willful misstatement or concealment of information, as well as a failure to furnish accurate income and family composition information. The DMMHA was required to give thirty days' written notice of termination of the lease when based on grounds other than nonpayment of rent. The lease provided for a grievance procedure to address disputes between the parties, including disputes over termination of the lease.

Hunter resided in the dwelling for the next twelve years. She consistently reported only a modest amount of income to the DMMHA, largely in the form of public assistance and social security. She did not report any unauthorized persons living in the dwelling.

In 2001, DMMHA discovered an individual named Leo Clark had been living in the dwelling occupied by Hunter for numerous years. Clark was not approved to reside in the house. Moreover, Clark and Hunter had received substantial gambling winnings from Prairie Meadows Racetrack and Casino as regular patrons at the casino. None of this information was disclosed to DMMHA.[1]

Armed with this undisclosed information, the DMMHA served Hunter on April 27, 2001, with a "notice of lease termination" pursuant to Iowa Code section 562A.34(3). The notice requested Hunter to vacate the premises on or before May 31, 2001, based on numerous lease violations, including her alleged failure to accurately report income and permitting an unauthorized person to live with her.

---

[1]In 1996, Hunter filed a civil rights action against a Des Moines police officer. A trial was held in 2001. Clark testified in deposition and at trial that he had been living with Hunter since 1996. Hunter also testified at trial that Clark lived at her house. Additionally, significant gambling winnings were disclosed. For example, records at Prairie Meadows Racetrack and Casino for 1999 indicated Clark and Hunter recorded winnings of over $75,000 each. While both individuals had significant losses as well, their winnings apparently exceeded their wagers by several thousands of dollars.

Hunter pursued her rights under the lease to contest the termination by requesting a grievance hearing. On May 24, 2001, a hearing officer upheld the decision by the DMMHA to terminate the lease. The hearing officer found Clark was living in the dwelling in violation of the lease, and both Clark and Hunter failed to report income to DMMHA in violation of the lease.

Hunter refused to vacate the premises and sought judicial review of the decision of the hearing officer in federal district court. During this time the DMMHA served Hunter with a three-day notice to quit and initiated a forcible entry and detainer action in state small claims court. This proceeding was stayed pending the judicial review proceeding in federal court.

On July 23, 2001, the federal district court upheld the decision of the hearing officer. Hunter did not appeal this decision. On August 7, 2001, the small claims court granted judgment for the DMMHA in the forcible entry and detainer action. Hunter appealed the small claims decision to district court. On October 2, 2001, the district court reversed the small claims decision and dismissed the forcible entry and detainer petition. It held the action was required to be dismissed for lack of jurisdiction because the DMMHA had failed to follow the procedures in Iowa Code section 562A.27(1), which the district court found required the DMMHA to provide Hunter with a notice to cure the alleged violations.[2]

---

[2]Although Hunter originally did not appeal the federal district court decision against her, after the state district court ruled a notice to cure was required, Hunter made several motions in federal court requesting relief from the federal district court's decision against her. These attempts, and their appeals, ultimately proved unsuccessful. *See Hunter v. Underwood*, 362 F.3d 468 (8th Cir. 2004).

The DMMHA then served Hunter with a "notice of termination of month-to-month tenancy and nonrenewal of lease term" on January 16, 2002, pursuant to Iowa Code section 562A.34(2). The notice informed Hunter the lease would terminate on February 28, 2002, based on the prior grounds of failing to accurately report her income and permitting Clark to live in the house. It did not include a notice to cure under section 562A.27(1), and Hunter again contested the termination through a grievance hearing. The grievance hearing officer upheld the DMMHA's decision to terminate the lease and found the DMMHA did not have to provide Hunter with a notice to cure because Hunter's breaches were not amenable to cure.

Hunter again refused to vacate the house, and the DMHHA served Hunter with a three-day notice to quit and brought another forcible entry and detainer action against her. The district court, however, granted Hunter's motion to dismiss the action based on the DMMHA's failure to give Hunter a notice to cure.

Hunter then filed an action against the DMMHA, and others, for breach of contract and abuse of process. Hunter sought damages, injunctive relief, and attorney fees based on the conduct of DMMHA in terminating the lease and bringing the forcible entry and detainer action without first providing a notice to cure. DMMHA filed a counterclaim against Hunter for breach of contract. It sought to recover the amount of rent Hunter would have been required to pay over the years if she had disclosed the information as required under the lease.

Hunter and the DMMHA both moved for summary judgment. The claim for summary judgment by Hunter was largely predicated on her position that the DMMHA was required to provide her with a notice to cure before terminating her lease and utilizing the court system to

remove her from the premises. She asserted the district court rulings in the FED actions established her claim that notice to cure was required as a matter of law, and the parties were precluded from relitigating the notice-to-cure issue under the doctrine of res judiciata. The DMMHA claimed it was not required to provide the notice, and the two prior administrative grievance proceedings between the parties conclusively established Hunter failed to disclose the required information, resulting in its damages of $20,294. Hunter submitted an affidavit in which she denied any gambling income and indicated that Clark was only in her house as a paid caretaker.

The district court granted summary judgment for the DMMHA and dismissed Hunter's claims as a matter of law. It determined Hunter could not recover on her claim for breach of contract without first establishing she had performed all the terms under the lease. The district court determined Hunter could not meet this predicate to recovery because the prior grievance proceedings between the parties conclusively established she failed to disclose required information. Accordingly, the district court found the doctrine of issue preclusion prohibited relitigation of the issue. Additionally, the district court found DMMHA was not required to give Hunter a notice to cure under the statute.[3] This conclusion also supported the determination by the

---

[3]The district court rejected Hunter's claim that the prior FED decisions by the district court (holding the law required the DMMHA to give a notice to cure) were binding on the parties in this action under the doctrine of res judicata. The district court held it was free to revisit rulings by another district court judge. However, the district court did apply the doctrine of issue preclusion to preclude relitigation of the factual findings made in the administrative proceedings that Hunter failed to disclose the required information. The DMMHA never argued issue preclusion also applied to preclude relitigation of the decision in the second administrative hearing that notice to cure was not required to be given. Additionally, the DMMHA never raised any such issue on appeal.

district court that Hunter could not establish her abuse-of-process claim as a matter of law. The district court additionally found Hunter failed to produce any evidence of an improper purpose by the DMMHA in pursuing the forcible entry and detainer action.

After the district court ruled on Hunter's claims, the parties entered into a stipulation regarding the DMMHA's breach-of-contract claim. Among other things, the stipulation stated the DMMHA had calculated Hunter owed them over $20,000 in past rent. Relying on its previous findings during summary judgment and on the stipulated facts, the district court entered judgment for the DMMHA on its counterclaim, awarding the DMMHA $20,294 in damages.

Hunter appealed the decision of the district court, and we transferred the case to the court of appeals. The court of appeals reversed the district court decision and remanded the case for a determination of damages for Hunter. Although it agreed with the district court that there was no evidence of an improper purpose to support the claim for abuse of process, it determined Hunter was entitled to a judgment as a matter of law in the breach-of-contract claim based upon its holding that the findings made in the prior grievance decisions involving the parties could not be used in this action to establish that Hunter failed to perform her obligations under the lease. Consequently, the court of appeals found the evidence set forth in Hunter's affidavit was sufficient to support her breach-of-contract claim. The court of appeals held the findings from the grievance proceedings that the DMMHA relied upon to support its claim had no preclusive effect because of the absence of a notice to cure. It also found that federal law prohibited any preclusive effect of the grievance hearings, and that the administrative proceedings could not otherwise support a claim of issue preclusion.

Additionally, the court of appeals found the doctrine of issue preclusion precluded the district court in this action from deciding that the notice to cure was not required to be given by the DMMHA, after two previous district court decisions determined the notice was required to be given. Both parties sought further review.

## II. Issues and Standard of Review.

The questions now on further review were initially brought before the district court on the parties' motions for summary judgment. We review rulings on motions for summary judgment for the correction of errors at law. *See Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 840–41 (Iowa 2005). Summary judgment is not appropriate unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The moving party has the burden to establish it is entitled to judgment as a matter of law, and the evidence must be viewed in the light most favorable to the nonmoving party. *Clinkscales*, 697 N.W.2d at 841.

## III. Hunter's Breach-of-Contract Claim.

The breach-of-contract claim by Hunter is premised on the argument that the DMMHA was required to provide a notice to cure under Iowa Code section 562A.27(1) before terminating the lease. The district court in this proceeding determined the statute did not require a notice to cure, while the district court in the prior FED decisions held a notice to cure was required. The court of appeals determined the prior FED decisions were res judicata, which precluded the DMMHA from asserting in this proceeding that it was not required to provide a notice to cure under section 562A.27(1).

Issue preclusion generally applies when four elements are present:

> "(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

*Grant v. Iowa Dep't of Human Servs.*, 722 N.W.2d 169, 174 (Iowa 2006) (citation omitted). The rule serves two important goals of providing fairness to the successful party in the first case and promoting efficient use of court resources by prohibiting repeated litigation over the same issue. *State ex rel. Casas v. Fellmar*, 521 N.W.2d 738, 740-41 (Iowa 1994) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed. 552, 559 (1979)). The court of appeals applied this general rule to conclude that the district court in this action was precluded from relitigating the prior rule of law enunciated by the district court in the FED litigation that the DMMHA was required to provide Hunter with a notice to cure.

Even when the requirements of the general issue preclusion rule are present, courts are required to consider if special circumstances exist that make it inequitable or inappropriate to prevent relitigation of the issue previously determined in the prior action.[4]  *Nat'l R.R. Passenger*

---

[4]Based on the arguments of the parties, the relevant prior order under the issue-preclusion analysis is the district court ruling in the FED action. Hunter claimed on appeal that the administrative rulings cannot serve as a basis for issue preclusion, and the only relevant prior actions for the purposes of applying res judicata to the issue of notice are the two prior FED proceedings. The DMMHA made no claim on appeal that the second administrative ruling, holding notice to cure was not required under the landlord-tenant statute, precluded relitigation in this issue on res judicata grounds. However, even if both administrative proceedings are considered in the res judicata analysis (including the second administrative proceeding that decided a notice to cure was not required to be given), the last district court ruling becomes the important prior action in the analysis because it was the last prior action to decide the notice-to-cure issue. *See* Restatement (Second) of Judgments § 15. Thus, the fighting issue,

*Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 528 (3d Cir. 2002); *Grant*, 722 N.W.2d at 174 (applying third exception to collateral estoppel doctrine). The exceptions share the same goal of fairness as the general rule and have been summarized in the Restatement (Second) of Judgments § 28 (1982). The second of five recognized exceptions provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . .
>
> 2. The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise avoid inequitable administration of the laws . . . .

We turn to the first alternative of the second exception that permits relitigation when "[t]he issue is one of law" and "the two actions involve claims that are substantially unrelated." We have not previously considered the application of this exception.[5]

---

regardless of the path followed to reach the question, is whether special circumstances exist that make it inequitable or inappropriate to prohibit relitigation of the notice-to-cure issue.

[5]We recognize all five exceptions reflect a policy that the doctrine of "issue preclusion is not so unyielding that it must invariably be applied, even in the face of strong competing considerations." *See* Restatement (Second) of Judgments § 28 cmt. *g*. Moreover, the exceptions share some common considerations, which we have considered in the past. For example, in *Garner v. Hartford Insurance Accident & Indemnification Co.*, 659 N.W.2d 198, 204 (Iowa 2003), we considered whether the issue presented in the second action was foreseeable at the time of the first action in the context of the fifth exception that permits relitigation when there is a "clear and convincing need for a new determination of the issue." *See* Restatement (Second) of Judgments § 28(5). While foreseeability can also be a consideration under the first alternative of the second exception, we nevertheless have never previously considered this particular exception. We have considered and applied, however, the second alternative of the second exception that permits relitigation when "the issue is one of the law" and "a new determination is warranted in order to take account of an

This exception was first discussed by the United States Supreme Court in *United States v. Moser*, 266 U.S. 236, 45 S. Ct. 66, 69 L. Ed. 262 (1924). In that case, the Court observed that the doctrine of res judicata does not apply to "unmixed questions of law." *Id.* at 242, 45 S. Ct. at 67, 69 L. Ed. at 264. That is, when a court has enunciated a rule of law in deciding a case between two parties, the same parties are not "estopped from insisting that the law is otherwise," in a subsequent action between them. *Id.* Yet, "a fact, question or right *distinctly adjudged* in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." *Id.* (emphasis added).

The Court has subsequently acknowledged the uncertainty that can be presented in the application of this exception, but has attempted to elucidate the exception through a two-step process. *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 104 S. Ct. 575, 78 L. Ed. 2d 388 (1984); *see also* Restatement (Second) of Judgments § 28, reporter's note to cmt. *b.* ("The distinction suggested in the *Moser* case, no matter how formulated, is difficult of application."). First, a court must determine if an "issue of fact" or an "issue of law" is sought to be relitigated. *Stauffer Chem. Co.*, 464 U.S. at 171, 104 S. Ct. at 579, 78 L. Ed. 2d at 393. Second, a court must decide whether the "issue of law" is presented "in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted." *Id.* Yet, even if the issue is one of law, estoppel applies to prevent relitigation "[w]hen the claims in the two separate actions between the same parties are the same or are closely related." *Id.* (quoting Restatement (Second) of Judgments § 28 cmt. *b*)).

---

intervening change in applicable legal context." *State v. Anderson*, 338 N.W.2d 372, 375 (Iowa 1983).

On one hand, this approach signals a rather straightforward rule that collateral estoppel ordinarily applies when two cases present the same legal issue. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4425, at 658 (1981) [hereinafter Charles Alan Wright]. On the other hand, the approach "sounds a note of caution where the issue involved is the choice or formulation of the governing rule of law." *Nat'l R.R. Passenger Corp.*, 288 F.3d at 530. Thus, "[w]here the same legal issue is presented in two suits but the second suit calls for application of the previously selected rule of law in a significantly different context, it may be inappropriate to preclude a party from contending that the governing rule of law applied in the first was erroneously chosen or formulated." *Id.* The rationale for this rule is explained in comment *b* to section 28 of Restatement (Second) of Judgments. When claims between the same parties are closely related, preclusion applies to issues that were litigated in the first action because it is unfair to the "winning party and an unnecessary burden on the courts." Restatement (Second) of Judgments § 28 cmt. *b.* Yet,

> if the claims in the two actions are substantially unrelated, the more flexible principle of stare decisis is sufficient to protect the parties and the court from unnecessary burdens. The rule of law declared in an action between two parties should not be binding on them for all time, especially as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected. Such preclusion might unduly delay needed changes in the law and might deprive a litigant of a right that the court was prepared to recognize for other litigants in the same position.

*Id.*

The decision "[w]hether the context in which the legal issue is presented in the second suit is sufficiently unrelated to that in the first to counsel against preclusion . . . should be made with reference to the

consequences of preclusions for the precluded party and the administration of justice." *Nat'l R.R. Passenger Corp.*, 288 F.3d at 530. One reason a different context can preclude relitigation is that it "may make it more likely that the second suit and the stake there at issue were not foreseeable at the time of the first suit." *Id.*; *see* Charles Alan Wright, at 244.[6]

Applying these principles to the case at hand, it is clear that the question whether a statute requires a landlord to give a notice to cure before terminating a month-to-month tenancy is one of law. The district court previously decided the issue in the context of whether it had jurisdiction or authority to hear an FED action. The district court did not distinctly adjudge a "fact, question or right" between the parties, but instead enunciated a rule of law in the course of deciding its jurisdiction to adjudicate the rights of the parties.

In this case, the same legal issue is presented as in the prior case between the parties, but in an entirely different context. Here, the issue is presented in the course of deciding whether a tenant is entitled to damages from a landlord for failing to provide a notice to cure under claims of abuse of process and breach of contract. These claims are unrelated to a claim to remove a tenant from leased property.

---

[6]We recognize the fifth exception to the general rule of issue preclusion specifically permits relitigation when there is a "clear and convincing need for a new determination . . . because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of the subsequent action." Restatement (Second) of Judgments § 28(5)(b); *see Garner*, 659 N.W.2d at 204. This stand-alone exception is compatible with the second exception, but the second exception extends beyond the foreseeability that the issue would be presented in the second action and focuses on the fairness of precluding a party from challenging a rule of law. Our failure to apply the fifth exception to permit relitigation in *Garner* does not impact our analysis of the application of the second exception to the circumstances of this case.

It is unlikely the district court in the first action foresaw that the rule of law would be applied to a damage claim in a second lawsuit, and it is equally unlikely a second lawsuit was considered when an appellate court denied the DMMHA's request for discretionary review of the legal ruling. The different contexts of the two cases make it fair to permit the DMMHA to challenge the legal precept previously established by the district court in the first case. Significantly, the DMMHA is not challenging the application of the law to the circumstances of the first case, but the rule of law itself. The reporter's notes to the Restatement exception provide:

> Subsection (2) recognizes . . . that a rule of law declared in a proceeding between two litigants is not binding on them for all time with respect to all claims that may arise between them . . . where, for example, a court deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases.

Restatement (Second) of Judgments § 28, reporter's note to cmt. *b*.

Under the circumstances of this case, the DMMHA should not be "estopped from insisting that the law is otherwise." *Id.* The circumstances fall within the exception and warrant relitigation. The common question is purely one of law, and the two claims, while factually related, are based upon different demands. Clearly, the illustrations and examples provided by the Restatement to support relitigation under the exception are more closely aligned to the facts of this case than the provided examples of situations that fall outside of the exception. *See generally id.* cmt. *b* & rptrs. ns.

As a result, the findings by the district court in the prior FED actions are not binding on this proceeding. Moreover, there is nothing

else that prohibits us on further review from determining whether a notice to cure was required to be given. The issue has been argued and appealed throughout these proceedings. Therefore, we proceed to analyze whether the DMMHA was required to provide a notice to cure under section 562A.27(1) of the Iowa Code.

We begin by recognizing the termination of the lease in this case was governed by multiple sources—not just the Iowa Code. The rental agreement, federal law, and our state law all address the subject of termination of the lease. Hunter's claim in this case, of course, is that the DMMHA breached the lease by failing to provide a notice to cure pursuant to section 562A.27(1) of Iowa's Uniform Residential Landlord and Tenant Act (IURLTA). *See generally* Russell E. Lovell II, *The Iowa Uniform Residential Landlord & Tenant Act & the Iowa Mobile Home Parks Residential Landlord & Tenant Act,* 31 Drake L. Rev. 253 (1981) [hereinafter Lovell]. While the IURLTA was not specifically enacted to govern federally subsidized low-income housing, it does not exclude such leases from its reach. *See* Iowa Code § 562A.5 (stating the scope and jurisdiction of chapter 562A). Instead, the IURLTA was made applicable "to rental agreements entered . . . after January 1, 1979." *Id.* § 562A.37. Consequently, the lease between the DMMHA and Hunter must comply with the IURLTA's provisions. As a result, the DMMHA would be required to give a notice if required under the IURLTA.

The IURLTA imposes certain requirements for the termination of a residential lease, generally depending on the type of tenancy and the reasons and timing of the termination. *See* Lovell, 31 Drake L. Rev. at 329–37 (discussing termination under the IURLTA). One set of rules requires written notice of termination for periodic tenancies. For example, if the tenancy is month-to-month, the landlord or tenant is

required to give written notice to the other at least thirty days prior to the end of the monthly tenancy. Iowa Code § 562.34(2).

A separate set of rules govern the termination of a lease by a landlord prior to the termination date in the lease agreement for noncompliance with the lease terms. *See id.* §§ 562A.27–.27A; *see also id.* § 562A.21 (stating the general and similar rules *tenants* must follow when terminating a lease because of landlord noncompliance). Section 562A.27(1) is one of these rules. It allows the landlord to terminate the lease agreement before its stated termination date when there "is a material noncompliance by the tenant with the rental agreement." *Id.* § 562A.27(1). In order to pursue this special remedy, the landlord must follow the statutory procedure. This procedure requires the landlord to "deliver a written notice to the tenant specifying the acts and omission constituting the breach" and additionally provide the tenant with a notice to cure, which must allow the tenant seven days to cure the breach. *Id.* If the breach is not cured by that date, the lease terminates as stated in the notice. *Id.* The lease does not terminate if the breach is cured within seven days. *Id.* However, if a similar breach recurs within six months, then the landlord may terminate the lease with seven days' notice. *Id.* Thus, the law creates a special remedy because it permits the landlord to terminate a tenancy before the end of the period of possession agreed under the lease or established by operation of law. At the same time, the law permits the tenant to ameliorate the harshness of the landlord's remedial action by allowing the tenant to stop the termination by curing the breach that gave rise to the exercise of the remedy by the landlord.

In addition to the statutory rules for terminating a lease, the IURLTA permits the landlord and tenant to impose their own terms if not prohibited by the IURLTA or any other law. *Id.* § 562A.9(1). Thus, the

terms of a lease must also be examined to determine if the landlord and tenant have agreed to terms in addition to those provided by law. We begin by first examining whether the IURLTA required the DMMHA to give a notice to cure.

The IURLTA rules governing the termination of a month-to-month tenancy at the end of the tenancy do not include a notice to cure. Unlike the termination of a lease prior to the end of the tenancy, the tenant has nothing to cure when a landlord decides to end a month-to-month tenancy at the conclusion of the tenancy period. A notice to cure is only required to be given by the landlord in order to terminate a tenancy prior to the end of the period of occupancy, when a tenant violates a term of the lease, to give the tenant an opportunity to remain in the dwelling until the end of the tenancy period by remedying the breach. *See id.* § 562A.27(1) (tenancy does not terminate if tenant adequately remedies breach before time established by landlord). A notice to cure is not required under the IURLTA when a landlord seeks to terminate a tenancy at the end of a tenancy period. In this case, the DMMHA would only need to invoke the special self-help termination remedy and include the notice to cure found in section 562A.27(1) if it sought to terminate Hunter's lease prior to the termination date without thirty days' notice, or the notice was otherwise required under the terms of the lease.[7] *See* Lovell, 31 Drake L. Rev. at 330 ("The basic self-help termination remedy [found in Iowa Code section 562A.21 (for tenants) and section 562A.27 (for landlords)] will seldom be of importance to the tenant who has a month-to-month tenancy, the most common situation for the residential

---

[7]The Iowa legislature recently amended section 562A.27 to permit a municipal housing agency to terminate a lease with thirty days' notice when the tenant has violated federal law without serving a notice to cure. *See* Iowa Code § 562A.27(5) (2007).

low-income tenant, as he [or the landlord] can always terminate without cause by giving thirty days notice.").

The lease agreement in this case clearly created a month-to-month tenancy.[8] The original term of the lease was thirty days, and the tenancy automatically renewed for successive monthly terms under the lease agreement. Consequently, as a month-to-month tenancy, the IURLTA did not require a notice to cure in the event the landlord desired to terminate the lease at the end of the tenancy. The IURLTA only required thirty days' written notice of termination. Thus, we turn to consider whether the lease terms imposed a notice-to-cure requirement.

The terms of the lease permitted the DMMHA to terminate the lease at the end of the tenancy only if the tenant engaged in "serious or repeated violations of material terms" of the lease. Of course, under the IURLTA, the parties were permitted to agree to this additional requirement of termination because it was not prohibited by law. *See* Iowa Code § 562A.9(1).

The notices of termination sent by the DMMHA informed Hunter her lease would terminate thirty days after the current month's term ended. The DMMHA's second notice of termination was specifically entitled "Notice of Termination of Month to Month Tenancy and Nonrenewal of Lease Term." The DMMHA was not attempting to terminate the lease before the end of the lease period. Moreover, these notices complied with the IURLTA, as well as with the terms of the lease. They stated Hunter had violated certain lease terms, which permitted the

---

[8]Current federal law states "[t]he lease shall have a twelve month term," and "the lease term must be automatically renewed for the same period." 24 C.F.R. § 966.4(a)(2)(i) (2006). Prior to 2000, however, federal law simply required the lease to "set forth . . . [t]he term of the lease and provisions for renewal, if any." 24 C.F.R. § 966.4(a)(1) (1999).

landlord to terminate the tenancy with thirty days' notice. Yet, this notice was not required under the IURLTA and did not transform the proceeding into a special remedy under section 562A.27(1). This notice was derived only from the terms of the lease, and those terms did not further require a notice to cure.

Thus, under the lease the DMMHA was required to prove noncompliance in order to terminate Hunter's lease, even if the DMMHA simply did not want to renew Hunter's lease for another month. Yet, the lease imposed no additional notice-to-cure requirement. Moreover, all the IURLTA required was for the DMMHA to provide thirty days' notice of termination. *Id.* § 562A.34(2). The notices clearly met these requirements, and there is nothing to indicate the notice of termination otherwise breached the lease or was contrary to any federal or state law. *See* 24 C.F.R. § 966.4(l). As a result, Hunter's claim for breach of contract must fail. The district court properly granted the DMMHA's motion for summary judgment on Hunter's breach-of-contract claim.

### IV. The DMMHA's Breach-of-Contract Claim.

We next consider the DMMHA's motion for summary judgment concerning its breach-of-contract claim. It sought summary judgment based on factual findings made in the grievance proceedings by two administrative hearing officers. In these proceedings, Hunter was found to have violated the terms of the lease agreement. The DMMHA contends these findings are res judicata and affirmatively establish that Hunter violated the lease. Hunter claims the doctrine of issue preclusion does not apply to these findings for several reasons. Chief among her reasons is the DMMHA failed to provide a notice to cure, and its failure to do so divested all adjudicative bodies of subject matter jurisdiction so that their findings are void.

Generally, a defect in the notice requirements under section 562A.27(1) "deprives the trial court of jurisdiction to hear a forcible entry and detainer action to recover possession of the leased property." *Liberty Manor v. Rinnels*, 487 N.W.2d 324, 326 (Iowa 1992). Yet, this principle does not impact this case because the DMMHA was not required to provide the notice to cure under section 562A.27(1). Thus, even if we presume this principle applies to the prior administrative and federal proceedings, the adjudicative bodies in these proceedings had jurisdiction to hear the issues presented.

Hunter also argues, as the court of appeals determined, that an exception to the issue-preclusion doctrine applies in this case under our holding in *Grant*. 722 N.W.2d at 175. In other words, Hunter argues we cannot give res judicata effect to the grievance hearing decisions because the grievance hearing proceedings were not the type of administrative hearings recognized in Iowa to justify res judicata. Such a conclusion, however, misinterprets our holding in *Grant*.

In *Grant* we were presented with the issue whether the department of human services could adjudicate a request to correct an assessment of child abuse after a district court had determined in a prior parallel proceeding that the child abuse occurred. We recognized an exception to the application of issue preclusion when " '[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them,' " *id.* (quoting Restatement (Second) of Judgments § 28(3), at 273), and ultimately held that the department of human services could correct its own assessment. However, the justification for permitting relitigation under the exception was based on the clear legislative scheme allocating jurisdiction of the

issue to the department of human services. The ruling was narrow and largely predicated on the special statutory process in place. Importantly, the decision was not based on "differences in the quality or extensiveness of the procedures." Thus, because Hunter relies on "the differences in the quality and extensiveness" between the procedures of the prior grievance proceedings and the district court proceeding to support her claim for relitigation, *Grant* provides little support.

Our review of procedures available to tenants under a grievance process reveals they comport with due process and afford a tenant a full and fair opportunity to litigate the factual issues. *See* 24 C.F.R. § 966.56. These procedures include the right to be represented by counsel, the right to present evidence and arguments in support of a tenant's complaint, and the right to examine witnesses. *See id.* § 966.56(b). The procedures largely resemble those normally provided in a court proceeding. Moreover, the decision of a grievance officer is, and was in this case, subject to review in federal court.

Nevertheless, Hunter points out that the grievance procedure requires a tenant to first make a showing of entitlement to relief before the housing agency has the burden to justify its actions. *See id.* 966.56(e). The requirement for the tenant to make a preliminary showing does not alter our conviction that any difference in the quality or extensiveness of the procedures in the grievance proceedings and in the underlying district court proceeding are not significant. We have not required identical procedures in determining whether to permit relitigation of issues, but primarily look to those procedural differences "likely to cause a different result" or differences that otherwise deprive a litigant of an opportunity to fully litigate the issues. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 873 (Iowa

1996); Restatement (Second) of Judgments § 28(4) (relitigation not precluded if party had a "significantly heavier burden"). There is nothing in the record in this case to suggest the applicable procedures would "likely cause a different result" or play any significant role in the outcome. In fact, the hearing officer in the grievance proceedings in this case specifically found by a preponderance of the evidence that the DMMHA established Hunter violated the two provisions in the lease that are the basis for the DMMHA's breach-of-contract claim. Thus, the burden-shifting procedure used in the grievance process ultimately placed the burden on the DMMHA to establish the violations. As a result, we see no reason why the grievance decisions should not be afforded the effect of res judicata. *See Pinkerton v. Jeld-Wen, Inc.*, 588 N.W.2d 679, 680 (Iowa 1998) ("A final adjudicatory decision of an administrative agency is regarded res judicata the same as if it were a judgment of the court.").

Finally, Hunter claims federal law does not permit grievance decisions to be used to affect other court proceedings, such as her contract action for damages. Federal regulations provide

> [a] decision by the hearing officer . . . in favor of the [DMMHA] or which denies the relief requested by the complainant in whole or in part shall not constitute a waiver of, nor affect in any manner whatever, any rights the complainant may have to a trial de novo or judicial review in any judicial proceedings, which may thereafter be brought *in the matter*.

24 C.F.R. § 966.57(c) (emphasis added). While there is very little judicial authority on the application of this regulation, we question whether it prohibits a grievance decision from being used to preclude relitigation of the issues decided. A breach-of-contract action for damages by the

DMMHA is not a judicial proceeding "thereafter . . . brought *in the matter*." It is a separate matter.

More importantly, however, even if we assume the federal regulation intended to preclude any res judicata effect of grievance decisions, this state is not obligated to follow the pronouncement. It is our task to determine whether the doctrine of res judicata may be applied in our courts to administrative decisions or particular types of administrative decisions,[9] and we are satisfied the doctrine is properly applied in this case.

We conclude the DMMHA was entitled to summary judgment on its counterclaim. Hunter violated the lease, and the DMMHA performed the terms and conditions for termination. The parties stipulated to the damages, and Hunter provided no evidence to the contrary. We reject all claims made by Hunter in opposition to summary judgment.

## V. Hunter's Abuse-of-Process Claim.

To prevail on an abuse-of-process claim Hunter must prove, among other things, the DMMHA used the legal process in an improper or unauthorized manner. *See Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990) (noting the plaintiff must prove three elements to recover on an abuse-of-process claim). Hunter attempts to do so by emphasizing the DMMHA's failure to comply with the holdings of the district court in the FED actions that required the DMMHA to include a notice to cure in its notice of termination. We, however, have already concluded these holdings were not res judicata and the DMMHA did not have to provide

---

[9]*Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002) ("The 'concept of federalism assumes power, and duty, of independence in interpreting our own organic law.'" (quoting *Pool v. Super. Ct.*, 677 P.2d 261, 271 (Ariz. 1984))).

the notice to cure under these circumstances. Therefore, Hunter's claim does not support this element of abuse of process.

In addition, even if the DMMHA was required to provide the notice to cure, Hunter must "prove that the [DMMHA] used the legal process *primarily* for an impermissible or illegal motive." *Id.* Hunter sought to establish a primary impermissible or illegal motive by evidence that the DMMHA filed the second FED action without providing a notice to cure after the district court ruled a notice to cure was required and by evidence the DMMHA lobbied for legislation during the pendency of the proceedings to eliminate any notice-to-cure requirement.

We conclude this evidence is insufficient to support the legal requirement that the DMMHA use the FED process primarily for an improper or illegal purpose. Without more, a legal dispute over the correct procedure to follow in pursuing an FED action does little to establish an improper motive in using the legal system. Even though the DMMHA was aware of the ruling by the district court that it was required to include the notice to cure when it sent the second notice of termination, the DMMHA relied on a different statutory provision for terminating the lease. *Compare* Iowa Code § 562A.34(2) (landlord may terminate month-to-month tenancy by giving thirty days' written notice) *with* Iowa Code § 562A.34(3) (landlord may bring action for possession if tenant remains in possession after expiration of the lease term). Therefore, the DMMHA did not act with disregard for the district court's decision by replicating its prior action. Similarly, a desire to lobby for a legislative change or clarification in the legal requirements to use the court system does not establish a primary illegal motive for using the legal system. As a result, we find the district court properly granted the

DMMHA's motion for summary judgment regarding Hunter's abuse-of-process claim.

## VI. Conclusion.

We vacate the decision of the court of appeals, and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Hecht, J., who takes no part.